# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.R. MCFARLANE, M.C. HOLIFIELD, K.J. BRUBAKER**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**ARVIS D. OWENS**
**COMMANDER (O-5), SUPPLY CORPS, U.S. NAVY**

**NMCCA 201300485**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 5 November 2013.
**Military Judge:** CAPT Carrie Stephens, JAGC, USN.
**Convening Authority:** Commander, Naval District Washington, Washington, DC.
**Staff Judge Advocate's Recommendation:** LCDR J.D. Pilling, JAGC, USN.
**For Appellant:** William E. Cassara, Civilian Counsel; Capt David Peters, USMC.
**For Appellee:** LCDR Keith B. Lofland, JAGC, USN; Capt Matthew Harris, USMC.

**8 January 2015**

---------------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

HOLIFIELD, Judge:

A panel of officers sitting as a general court-martial convicted the appellant, contrary to his pleas, of violating a lawful general order (sexual harassment), abusive sexual contact, and conduct unbecoming an officer, in violation of Articles 92, 120, and 133, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 920, and 933. The appellant was acquitted of an additional specification involving sexual harassment, three

specifications of abusive sexual contact, and one specification of assault consummated by battery. The members sentenced the appellant to be dismissed from the Service. The convening authority (CA) approved the sentence as adjudged.[1]

The appellant raises eleven assignments of error (AOE):

(1) that the Government's failure to provide requested medical records of the victim denied him his 5th Amendment right to due process;

(2) that the Government's failure to provide evidence of the victim's learning disability denied him his right to discovery under Article 46, UCMJ;

(3) that the military judge denied the appellant's Sixth Amendment right to confrontation by precluding cross-examination of the victim regarding her learning disability;

(4) that the military judge erred in admitting the victim's prior consistent statements when they were not made prior to when a motive to fabricate arose;

(5) that the military judge improperly allowed the trial counsel to question the appellant regarding the veracity of a prosecution witness' testimony;

(6) that the failure to provide the members with the general order the appellant was accused of violating renders the evidence on that charge legally insufficient;

(7) that the Article 92 specifications fail to state offenses, as the general order in question is not punitive;

(8) that the military judge abused her discretion when she did not grant a mistrial when at least one member was no longer confident in the panel's verdict;

(9) that the evidence supporting the Article 120, UCMJ, charge was factually insufficient;

---

[1] On 23 December 2014, the court released an opinion in which we affirmed some of the findings, set aside the CA's action, and returned the record of trial to the Judge Advocate General for remand to an appropriate CA for new post-trial processing. By Order dated 2 January 2015, the court determined that it would *sua sponte* reconsider its 23 December 2014 opinion. The court's 23 December 2014 opinion is hereby withdrawn and replaced with this opinion, in which we do not affirm any of the findings in advance of the new CA's action.

(10) that the military judge's post-trial order to the members denied the appellant an opportunity to submit clemency matters; and,

(11) that the promulgating order inaccurately reflects the specification language of which the appellant was found guilty.[2]

After careful consideration of the record of trial, the appellant's AOEs, and the written and oral submissions of the parties, we find the evidence introduced at trial insufficient to support a conviction for violation of a lawful general order and will take corrective action in our decretal paragraph. Our decision in this regard renders moot the appellant's seventh and eleventh assignments of error.

## Background

While assigned to the Defense Logistics Agency (DLA) as the Strategic Management Branch Chief within the Order Management Division, the appellant, a married man, worked with SD, a GS-4 civilian employee in the same Division. SD had been hired through the Workforce Recruitment Program (WRP), which was designed, at least in part, to facilitate the hiring of persons with learning disabilities. The appellant and SD had frequent interaction, and, despite SD often sharing personal information during their meetings, their relationship was professional. During a 4 October 2012 meeting in the appellant's office, the appellant and SD shared two "friendly" hugs and the appellant commented favorably on her dress and appearance. Record at 626, 974. Six days later, the appellant called SD to his office. At this meeting the appellant kissed SD and made numerous comments of a sexual nature.[3] The parties disagree as to whether this conduct was consensual. Later that day, the appellant again asked SD to come to his office. Upon her arrival, the appellant kissed SD, rubbed her vagina through her underwear, touched and kissed her breasts, placed SD's hand on his erect penis, and made numerous sexual comments.[4] Again, the parties disagree as to whether this conduct was consensual. Throughout the

---

[2] We have considered AOEs 4, 5 and 8 and find no error. *United States v. Clifton*, 35 M.J. 79, 81 (C.M.A. 1992).

[3] The appellant was charged with violating a lawful general order by sexually harassing SD through these comments, but was acquitted of this specification.

[4] Based on these comments, the appellant was convicted of violating a lawful general order prohibiting sexual harassment. Although charged individually with each of the sexual contacts, the appellant was convicted only of causing SD's hand to touch his penis without her consent.

3

encounter, SD did not try to leave or clearly articulate her lack of consent.  Rather, she made statements that she "didn't know how quiet [she] could be," and "couldn't wrap [her] head around this."  *Id.* at 651-52.

SD did not immediately report the appellant's conduct and witnesses observed nothing unusual about her demeanor that day.  She remained at the office until her normal departure time.  SD did not return to the office for more than two weeks following this incident, giving her supervisor various excuses for why she could not come in to work.  At trial, SD testified she feared going to the office, believing the appellant would rape her.  Several days after the encounter with the appellant, SD contacted her personnel office seeking information on how to make a sexual harassment/assault complaint.  Shortly thereafter, she was contacted by DLA's Office of the Inspector General.  During SD's absence, the appellant repeatedly attempted to contact her and expressed concern for SD to SD's supervisor, two things he had not done during other periods when she was absent.

Other facts necessary to address the assigned errors will be provided below.

### Discovery/Production

The first two AOEs involve alleged discovery and production violations.  Prior to the Article 32, UCMJ, hearing in this case, the defense requested, *inter alia*, "any medical records which exist for [SD] for any medical treatment, received as a result of any complaints pertaining to this investigation," as well as "any psychiatric records which exist for [SD]" that either "may bear upon [SD's] mental capacity on 4 and/or 10 October 2012" or reflect "treatment as a result of any mental issues attributed to the alleged misconduct by [the appellant]."  Appellate Exhibit LXXI.  The defense subsequently requested "[a]ccess to all relevant personnel, medical and mental health records of all potential witnesses who may testify against the Accused at any stage of the case," as well as "any medical or psychiatric report or evaluation, tending to show that any prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired[.]"  AE LXXII.  While trial counsel makes a passing reference to a Government "response," there is nothing in the record to indicate how the Government answered these requests.  Record at 1256.

Article 46, UCMJ, requires that "the trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain . . . evidence[.]"  RULE FOR COURT-MARTIAL 703(F)(1), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.) further

4

requires that the Government produce any evidence, specifically requested by the defense, upon a showing it is "relevant and necessary." We review claimed discovery and disclosure violations in two steps: "'first, we determine whether the information or evidence at issue was subject to disclosure or discovery; second, if there was nondisclosure of such information, we test the effect of that nondisclosure on the appellant's trial.'" *United States v. Coleman,* 72 M.J. 184, 187 (C.A.A.F. 2013) (quoting *United States v. Roberts*, 59 M.J. 323, 325 (C.A.A.F. 2004)). Where the defense has made a general request, we test nondisclosure for harmless error, that is, "whether there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Id.* at 186 (internal quotation marks and citation omitted). However, where the undisclosed matter was the subject of a specific request, we look to see whether the nondisclosure was harmless beyond a reasonable doubt. *Id.* at 187. This determination must be made in light of the entire record. *United States v. Morris,* 52 M.J. 193, 197 (C.A.A.F. 1999).

***Medical Records***

The appellant argues the prosecution failed to provide SD's medical records despite a specific request, and that the military judge's remedy for the nondisclosure – to preclude the prosecution from mentioning any medical or psychological treatment during sentencing – was inadequate.

This issue first arose during trial when SD, responding to a question from civilian defense counsel (CDC) regarding a pending lawsuit, mentioned medical expenses. A subsequent question from a panel member sought the details of SD's medical treatment; CDC did not object. After closing arguments, CDC for the first time claimed a discovery violation concerning the requested medical records. While the military judge did not conclusively find that there was a violation, she stated she was "inclined to make [a] determination that there was some violation." Record at 1260. She then instructed the members to disregard any evidence on the merits regarding any medical or psychological treatment SD may have received, and granted CDC's proposed remedy to preclude mention of any medical or psychological treatment during sentencing.

After stating the "government's position was [the medical records were] not relevant" at the time when the prosecution responded to the production request, trial counsel admitted,

"[t]o be perfectly honest, I don't know that they exist[.]" *Id.* at 1254, 1256. Unfortunately, neither does the military judge or this court. We are left to consider a long list of "what if" questions based on what the records "may contain." Appellant's Brief of 23 May 2014 at 17. The time to answer these questions was at trial. CDC did not move to compel the production of the requested records, request a delay in the trial to allow for an *in camera* review by the military judge, or request a mistrial based on the production violation. By not doing so, we find the appellant waived the issue.

There is a "'reasonable presumption against waiver of fundamental constitutional rights. . . [and such a] waiver is effective only if it is knowingly and intelligently rendered.'" *United States v. Avery*, 52 M.J. 496, 498 (C.A.A.F. 2000) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Such a waiver requires affirmative action and not merely a failure to object. *Id.* (citation omitted). Not every discovery violation involves a constitutional right, as "Article 46 and its implementing rules provide greater statutory discovery rights to an accused than does his constitutional rights to due process." *Coleman*, 72 M.J. at 187 (citations omitted). However, we need not determine whether the present violation impacted a fundamental constitutional right; even applying the higher "knowingly and intelligently rendered" test, we still find waiver in this case.

Here, CDC was aware of and objected (if somewhat belatedly) to the alleged violation. Despite speculating on how the medical records may have assisted him in impeaching SD on the merits, CDC sought no remedy other than for sentencing. When asked by the military judge for a proposed remedy, CDC stated: "the remedy is that the witness not be allowed to testify about things that haven't been discovered on—on the defense." Record at 1257. When the military judge later indicated she would instruct the members to disregard any evidence regarding medical or psychological impact, CDC responded, "I'm fine with that." *Id*. at 1300. Had CDC insisted on the production of the medical records, as he did regarding the learning disability testing (addressed below), this court would be in a position to weigh the relevance and necessity of those records. In foregoing this remedy, despite being made aware of the records' existence and objecting to their nonproduction, CDC created the very situation that waiver is designed to address.

***Learning Disability Testing***

At the Article 32, UCMJ, hearing, SD testified she had a learning disability. Despite being on notice of this issue – now considered by the appellant to be critical to his case - the defense neither filed a supplemental discovery request nor questioned before trial the Government's failure to turn over any related documents in response to its general discovery request.

At trial, trial counsel mentioned SD's learning disability in his opening statement and sought to question SD on it during direct examination. CDC objected, arguing lack of discovery and lack of relevance to the offenses as charged.[5] The military judge found that the information "could be relevant" and allowed the questions, stating the defense could cross-examine SD on the matter and inquire whether SD had been tested for a learning disability. Record at 600, 603. The military judge also offered to give a limiting instruction if desired.

The trial counsel asked several questions on the subject, establishing that SD had a learning disability, was able to graduate from high school despite this, and was hired through "a program for people with disabilities." *Id.* at 608. CDC's cross-examination on the topic was significantly more substantial, eliciting testimony from SD that her condition affected her ability to read quickly and sometimes required people to explain things to her in more detail. SD also testified that she had "normal social skills" and no "cognitive disabilities." *Id.* at 689. SD stated she had been tested for a learning disability in high school, and that a report of this testing existed.

The military judge renewed her offer to provide a limiting instruction; both the prosecution and defense declined the offer, with CDC restating his request to see the learning disability-related records. *Id.* at 796. SD subsequently provided the report[6] to the prosecution, who, at the military judge's direction, shared it with the defense. In response to the CDC's objection to the late discovery of the report, the military judge ruled the prosecution could not use SD's learning disability as "one of the bases for . . . any of the charges." *Id.* at 1101.

---

[5] The Government did not charge the appellant with any offenses based upon SD's lack of capacity.

[6] AE LXIX.

The Government later called SD as a rebuttal witness. During cross-examination, CDC sought to question SD on the learning disability report. In response to a relevance objection, CDC argued that he should be able to use the report to impeach SD's credibility. Specifically, he argued that, since the report did not substantiate a claim of a learning disability, SD's earlier testimony that she had such a disability was false. The military judge disagreed with CDC's interpretation of the report, stating that the report did not impeach SD's testimony. At that point, having had the benefit of hearing SD's testimony and seeing the report's contents, the military judge reversed her earlier ruling on the relevance of SD's learning disability and instructed the members to disregard all testimony they had heard regarding the subject. CDC did not object to this instruction.

It is not disputed that the report was not in the Government's possession prior to the trial. It is also clear that neither of the defense's discovery requests identified the report with the specificity required by R.C.M. 703(f)(3).[7] However, the record indicates that the Government was aware of SD's learning disability, and knew that a record of testing existed. Arguably, the Government should have known SD's learning disability might prove relevant when it decided to raise the issue in its opening statement and case-in-chief.

Whether these facts transform the defense's general request so as to meet the requirements of R.C.M. 703, or subject the nondisclosure to the stricter review normally applicable to a specific request, are not questions we need answer here, as the appellant has not demonstrated prejudice. Assuming, *arguendo*, that the defense made a specific request for the testing report, that the failure of the Government to obtain and provide the report in response to the defense's request was error, and that the military judge's instruction to the members was an insufficient remedy, we test whether the nondisclosure was harmless beyond a reasonable doubt. The sole basis for the report's relevance offered by the CDC was to impeach SD's claim of having a learning disability. Unlike SD's medical records, we *do* know the contents of her learning disability testing report, and a thorough reading reveals the report comports in all relevant aspects with her testimony. As we agree with the military judge's finding that the report in no way served to

---

[7] R.C.M. 703(f)(3) requires that "any defense request for the production of evidence shall list the item of evidence to be produced and shall include a description of each item sufficient to show its relevance and necessity, a statement where it can be obtained, and, if known, the name, address, and telephone number of the custodian of the evidence."

impeach SD, we find any error in not disclosing the report prior to trial was harmless beyond a reasonable doubt.

## Confrontation

The appellant next claims the military judge's ruling that SD's learning disability was not relevant denied him the opportunity to cross-examine SD and thereby deprived him of his Sixth Amendment right to confrontation. We disagree.

"Where the Sixth Amendment's right to confrontation is allegedly violated by a military judge's evidentiary ruling, the ruling is reviewed for an abuse of discretion." *United States v. Moss,* 63 M.J. 233, 236 (C.A.A.F. 2006) (citation omitted). Where an abuse of discretion involving a constitutional right is found, we look to see whether the error was harmless beyond a reasonable doubt. *Id.* While the right of confrontation "necessarily includes the right to cross-examine," this right is not unlimited. *United States v. Ellerbrock,* 70 M.J. 314, 318 (C.A.A.F. 2011) (citations omitted). A military judge may limit interrogation that is "only marginally relevant." *Id*. (internal quotation marks and citations omitted).

As discussed above, the military judge initially ruled that evidence of SD's disability "could be relevant,"[8] only to later rule that it was "not relevant to these proceedings."[9] While the appellant seeks to make much of this reversal, it is easily explained. The initial ruling was made in the absence of any specific information regarding SD's learning disability. Her final ruling had the benefit of CDC's cross-examination of SD and a full review of the testing report. A military judge may, "upon any question of law other than a motion for a finding of not guilty, . . . change his ruling at any time during the trial." Art. 51(b), UCMJ.

CDC's stated purpose for cross-examining SD on her learning disability was to attack her credibility, saying: "she came in here and testified that she has a learning disability and, based on everything in this [report], it doesn't appear to me that she does." Record at 1155. As we agree with the military judge's finding that the report corroborates SD's testimony and does not say that SD does not have a learning disability, we do not find that the military judge abused her discretion in barring the desired cross-examination.

---

[8] Record at 600.

[9] *Id.* at 1154.

9

Even were we to assume error, we find no prejudice. The appellant now argues on appeal that the learning disability was relevant to explain why SD responded to the appellant and investigators as she did. At trial, the defense specifically addressed and rejected this argument: "there's got to be a nexus between the learning disability and the lack of response." Record at 602. He then noted the lack of any evidence showing such a relationship other than SD's testimony that "she needs things explained to her at work or she has to read slower." *Id.* Given the absence of anything in the subsequently-produced testing report to establish the nexus CDC found missing, we find it very unlikely the defense would have changed its position and argued relevance on the basis now raised on appeal. Even if they had, we find beyond a reasonable doubt that it would have had no impact on the verdict. Accordingly, we find that precluding the line of questions sought by CDC, even assuming it was error, was harmless beyond a reasonable doubt.

## Legal and Factual Sufficiency

The appellant claims, in his sixth and ninth AOEs, that the evidence was factually and legally insufficient to sustain convictions for violation of a lawful general order and abusive sexual contact, respectively. We agree on the former and disagree on the latter.

We review questions of legal and factual sufficiency *de novo*. *United States v. Washington,* 57 M.J. 394, 399 (C.A.A.F. 2002). The test for legal sufficiency is whether any rational trier of fact could have found that the evidence met the essential elements of the charged offenses, viewing the evidence in a light most favorable to the Government. *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987). The test for factual sufficiency is whether we are convinced of the appellant's guilt beyond a reasonable doubt, allowing for the fact that we did not personally observe the witnesses. *Id*. at 325. However, reasonable doubt does not mean the evidence must be free from conflict. *United States v. Rankin*, 63 M.J. 552, 557 (N.M.Ct.Crim.App. 2006), *aff'd*, 64 M.J. 348 (C.A.A.F. 2007).

## *Violation of a Lawful General Order*

The two specifications under Charge I alleged violations of Secretary of the Navy Instruction 5350.16A, dated 18 December 2006. At trial, trial counsel marked a copy of the instruction as "Prosecution Exhibit 14 For Identification", and the military judge took judicial notice of the instruction's existence and applicability to the appellant. During an Article 39(a), UCMJ, session in which the parties discussed what portions of the instruction would be published to the members, the military judge stated, "the entire instruction is part of the evidence in this case." Record at 878. Trial counsel then responded by offering the entire instruction as "Prosecution Exhibit 14." *Id.* However, despite the agreement of both parties and the military judge that the instruction had been admitted into evidence, the words "For Identification" were never struck, and the exhibit was not provided to the members. Nevertheless, the members found the appellant guilty of violating the instruction.

The appellant was acquitted of the first specification under Charge I. Thus, we restrict our review to the facts as they apply to the second specification only. The military judge instructed the members on the elements of the second specification under Charge I as follows:

> In order to find the accused guilty of the offense, you must be convinced by legal and competent evidence beyond a reasonable doubt:
>
> One, that there was in existence a certain lawful general order in the following terms, SECNAV Instruction 5350.26ALPHA, dated 18 December 2006;
>
> Two, that the accused had a duty to obey such order; and,
>
> Three, that on or about 10 October 2012, the accused failed to obey this order--this lawful general order by sexually harassing [SD] by engaging in verbal conduct of a sexual nature, which had the effect of creating a hostile work environment when he told [SD] while at work "You know I am going to fuck you, right?" or words to that effect, "Look at me--look at what you do to me," or words to that effect, referring to his erection. Then he had--that he had been good as long as he could, or words to that effect, that he was going to do something bad, or words to that effect, that her butt is nice, or words to that effect, that her breasts were nice, or words to that

11

effect, and that he knew how to keep her quiet, or words to that effect.

For [this] specification[], the following is provided: As a matter of law the order in this case, as described in the specification, if, in fact, there was such an order, was a lawful order.

Record at 1185-86. She also instructed the members that she had "taken judicial notice that Secretary of the Navy, SECNAV, Instruction 5350.16A is a lawful general order, that it was in existence throughout October 2012, and that the accused had a duty to obey it during that period of time," and that the members were "permitted to recognize and consider those facts without further proof." *Id.* at 1194. There was no discussion of the instruction's language.

Thus, all the members knew of the instruction was that it was a lawful general order in existence and applicable to the appellant at the time of the alleged violation. Without having the actual text of the instruction against which to examine the appellant's conduct, they were left to fall back on facts outside the record. While these senior officers likely knew the basic proscriptions of the Navy's sexual harassment policy through many years of training, they were properly instructed that "[a]n accused may be convicted based only on evidence before the court[.]" *Id.* at 1195. Accordingly, we conclude that the appellant's conviction under Specification 2 of Charge I cannot withstand the test for legal sufficiency, and will set aside that finding of guilty and dismiss that specification.

*Abusive Sexual Contact*

The elements of abusive sexual contact under Article 120, UCMJ, are as follows: (1) That the appellant committed or caused sexual contact by SD; and, (2) that the touching was done by causing bodily harm to SD. The appellant and SD agree that SD touched the appellant's penis with her hand. But, while SD stated the appellant placed her hand there against her will, the appellant testified SD did so of her own volition.

SD testified that the appellant "grabbed [her] hand and started rubbing his erection with it." Record at 652. She also testified that, other than the initial two hugs, all contact during the events in question was without her consent.

12

Accordingly, we find the prosecution presented evidence on every element of the charged offense.

The next question is whether the evidence was factually sufficient. SD and the appellant, the sole occupants of the room where the touching occurred, painted very different pictures on the matter of consent. The issue, then, is whether reasonable doubt exists with respect to SD's testimony regarding lack of consent. As matters in support of reasonable doubt, the appellant offers two alleged motives to fabricate. First, the appellant argues that SD was seeking revenge for a statement by the appellant implying that she had no future with him. Second, the appellant claims SD was seeking money; she hired an attorney and filed suit against the Government for the sexual harassment she allegedly endured.

We give no weight to the first alleged motive. We simply find incredible the appellant's scenario: that a consensual sexual encounter that ended with the appellant responding "I don't know" to SD's asking "what does this mean?" triggered a desire for revenge so strong as to support a false allegation of sexual harassment and assault. Appellant's Brief at 81-82. As for the lawsuit, CDC questioned SD at length regarding the matter. We find nothing in SD's testimony to indicate a fraudulent intent. To the contrary, the evidence indicates she was simply exercising her right to seek compensation for a wrong she suffered.

The appellant also points to numerous inconsistencies between SD's various statements and in-court testimony. We find these to be minor, as her testimony comported in all key aspects with the appellant's description of events. On the one important issue where they diverge – consent – SD's earlier statements and testimony are consistent.

Accordingly, after carefully reviewing the record of trial and considering the evidence in the light most favorable to the Government, we are convinced that a reasonable trier of fact could have found all the essential elements of abusive sexual contact beyond a reasonable doubt. Furthermore, after weighing all the evidence in the record and having made allowances for not having personally observed the witnesses, we are convinced beyond a reasonable doubt of the appellant's guilt to Charge II.

**Post-Trial Matters**

13

The appellant next claims that the military judge had post-trial communications with the members that had a chilling effect on his ability to obtain clemency recommendations.  He also claims the staff judge advocate (SJA) withheld one or more clemency recommendations from the CA.

***Post-Trial Order to Members***

The military judge shall "[i]nstruct the members on questions of law and procedure which may arise."  R.C.M. 801(a)(5).  "'The question of whether a jury was properly instructed is a question of law, and thus, our review is *de novo*.'"  *United States v. Maxwell*, 45 M.J. 406, 424 (C.A.A.F. 1996) (quoting *United States v. Snow*, 82 F.3d 935, 938-39 (10th Cir. 1996)).

A military judge's "hearing and ruling upon any matter which may be ruled upon by the military judge . . . shall be conducted in the presence of the accused, the defense counsel, and the trial counsel and shall be made part of the record." Art. 39(a) and (b), UCMJ.  Other than when members are voting or deliberating, all proceedings "shall be made part of the record and shall be in the presence of the accused, the defense counsel, the trial counsel, and in cases in which a military judge has been detailed to the court, the military judge."  Art. 39(c), UCMJ.

During deliberations on sentencing, a member asked the military judge whether it would be possible for the panel to re-vote on the findings to Specification 4 of Charge II (abusive sexual contact).  The military judge properly instructed the members that, once findings are announced in open court, reconsideration is not permitted. R.C.M. 924(a).  The appellant was sentenced on 13 September 2013.

Eleven days after trial, CDC sent to the members an e-mail explaining the clemency process and seeking their input.  Most notably, he requested statements from members regarding their desire to set aside the findings of guilty on Specification 4 of Charge I.[10]  One of the members, Captain (CAPT) O, responded by

---

[10] The entire email read as follows:

> I am contacting you to follow up on the request you made during your sentencing deliberations in the U.S. v. CDR Arvis Owens trial.  Some or all of you inquired about the procedure for reconsideration of your vote regarding Specification 4 of Charge

saying he preferred to send his response directly to the CA. The record does not indicate whether he actually sent anything to the CA. Three days later, the President of the court-martial, CAPT H, forwarded the CDC's e-mail to the military judge, seeking guidance. The judge responded by e-mail on 3 October 2013, directing CAPT H "to refrain from contacting any counsel that is not on the record in open court," and to "pass this order along to the other members." AE LXXXVII. She advised that "[f]urther order of the court will be forthcoming via the Trial Counsel." *Id.*

That same day, the military judge issued the following order to the members:

1. Prior to adjournment in this case, I instructed you as follows:

To assist you in determining what you may discuss about this case now that it is over, the following guidance is provided. When you took your oath as members, you swore not to discover or disclose the vote or opinion of any particular member of this court, unless required to do so in due course of law. This means that you may not tell anyone about the way you or anyone else on the court voted or what opinion you or they had, unless I or another judge requires you to do so in court. You are each entitled to this privacy. Other than that limitation, you are free to talk about the case to anyone, including me, the attorneys or anyone else. You can also decline to

---

II. The judge stated that you may not do so after findings. The Manual for Courts-Martial is silent on whether members may reconsider after findings. Nonetheless, the final decision on all courts-martial convictions is the convening authority. The convening Authority may approve, set aside, or approve some and set aside others of the charges. He may also grant clemency. I intend to request that the convening authority set aside the finding of guilty on Specification 4 of Charge II based on your request to reconsider.

My request to the convening authority will receive more favorable consideration if I can demonstrate that my request is based on the wishes of at least 3 of the 7 members. I, therefore, request that you email me a brief email stating that [sic] your desire to set aside the finding of guilty on Specification 4 of Charge II. This is not a request for your vote, nor are you required to disclose your vote. It is only a request for you to individually – if you did – restate the request you made during the trial regarding that Specification." AE LXXXVII.

15

participate in such a discussion if that is your choice.

Your deliberations are carried out in the secrecy of the deliberation room to permit the utmost freedom of debate and so that each of you can express your views without fear of being subjected to public scorn or criticism by the accused, the convening authority, or anyone else. In deciding whether to answer questions about this case, and if so, what to disclose, you should have in mind your own interests and the interests of the other members of the court.

AE LXXXVII. This was a verbatim restatement of the instructions she provided the members at the trial's end. After quoting CDC's e-mail to the members, the military judge went on to correct CDC's incorrect statement of the law regarding R.C.M. 924(a). She further instructed the members:

3. Pursuant to R.C.M. 1105(b)(2)(D), it is permissible for the Defense to seek from you and for you to provide a clemency recommendation to the convening authority.

4. However, pursuant to R.C.M. 923, R.C.M. 1008, Military Rule of Evidence (M.R.E.) 606(b) and the Discussion to R.C.M. 1105 (b)(2)(D), a clemency petition from a member should not disclose the vote or opinion of any member expressed in deliberations. This prohibition extends to any member's vote or opinion on the following: findings, any request to reconsider findings, and sentence.

*Id.*

On 4 October, another member, Commander M, informed the CDC that he had e-mailed his recommendation to the SJA. The record does not indicate what, if anything, the SJA received from the member, although the SJA stated in his recommendation to the CA that "[t]here is no clemency recommendation by the sentencing authority made in conjunction with the announced sentence."[11]

The defense filed a written objection to the military judge's order on 9 October 2013, and requested a post-trial Article 39(a), UCMJ, session. The defense also filed a motion

---

[11] Staff Judge Advocate's Recommendation of 31 Dec 2013 at 1.

for a mistrial based on newly discovered evidence.  At that session the defense indicated it had ceased attempts to contact the members, thinking it safer to request the post-trial hearing.  The defense's objection, in part, was that in applying an impeachment-of-the-findings standard to the defense's request, the military judge mischaracterized the request.  The military judge explained that her ruling did not characterize the defense's e-mail request in any way.  However, she said the request "tetered [sic] on asking for a vote[.]"  Record at 1416.

The military judge ruled that the order would stay in effect, and denied the defense's motion for a mistrial.  In her ruling, the military judge found that CDC's e-mail to the members was "asking for their votes and thoughts behind their decisions," and "[a]sking members who desired a revote to restate their request to the Convening Authority effectively asked members to reveal their vote in this regard."  AE XCIII at 5.  She clarified, however, that her order "does not forbid or otherwise prohibit any member from contacting the Convening Authority to discuss matters permitted by the M.C.M.," nor does it "limit[] the ability of defense counsel to seek clemency petitions from the members or provide clemency materials to the Convening Authority."  *Id*. at 6.

With this extensive background, we address the appellant's claim of error.  First, the military judge's e-mail to CAPT H violated the requirements of Article 39(b) and (c), UCMJ.  However, while "violation of Article 39(b) creates a 'rebuttable presumption of prejudice,'" *United States v. Thompson*, 47 M.J. 378, 379 (C.A.A.F. 1997) (quoting *United States v. Allbee*, 18 C.M.R. 72, 76 (C.M.A. 1955)), we are not left speculating as to the content of the military judge's communications with the members.[12]  The record contains the sum of these communications, both in her e-mail to the CAPT H and her supplemental order.  Accordingly, we are able to review the case for prejudice.  We find none.

Second, we find that any error the military judge may have committed by issuing her e-mail order without giving the parties an opportunity to be heard was cured by the subsequent Article 39(a), UCMJ, session.  The military judge gave both parties a chance to state their positions and persuade her to alter her order.  Had the defense been able to show how the order was in

---

[12] We note that both *Allbee* and *Thompson* involved the legal officer/military judge communicating with the members during deliberations.  That is not the case here.

17

any way a misstatement of the law, the military judge could have revised or rescinded the order.

Third, in her order the military judge discussed the extent to which the defense could seek clemency recommendations from the members. Despite any trepidation the defense may have had before the hearing, once the military judge reaffirmed and clarified her order the defense was free to revisit the matter with the members. There is nothing in the record to indicate the defense did so. Even assuming the military judge erred in the procedural handling of this matter – and further assuming the defense's failure to reengage with the members does not constitute forfeiture of the issue - we cannot say the appellant has demonstrated any prejudice.

Finally, we find no error in the language of the order itself. The military judge simply restated her earlier instructions, corrected CDC's misstatement of the law, advised the members that it was permissible for the defense to request (and for the members to provide) a clemency recommendation, and reminded the members of their duty not to disclose the vote or opinion of any member expressed in deliberations. This order was a full, clear, and accurate statement of the law. The appellant's unsupported examples of possible misunderstanding do not persuade us otherwise.

***Clemency Matters***

Errors in post-trial processing are reviewed *de novo*. *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000). The Court of Appeals for the Armed Forces has identified three requirements for "resolving claims of error connected with the convening authority's posttrial review. First, an appellant must allege the error at the Court of Criminal Appeals. Second, an appellant must allege prejudice as a result of the error. Third, an appellant must show what he would do to resolve the error if given such an opportunity." *United States v. Wheelus*, 49 M.J. 283, 288 (C.A.A.F. 1998). Furthermore, "there is material prejudice to the substantial rights of an appellant if there is an error and the appellant makes some colorable showing of possible prejudice." *Id*. at 289 (internal quotation marks and citation omitted).

Citing to the e-mails of CAPT O and CDR M, the appellant claims the SJA withheld clemency recommendations from the CA. While neither the SJA's recommendation (SJAR) nor the addendum thereto mentions any such recommendations, the CA, in taking his

18

action, states he considered "the email string indicating what appears to be messages from members of the court-martial[.]" Convening Authority's Action of 16 Jan 2014 at 4. It appears the CA is referencing the emails of CAPT O and CDR M, enclosed in the defense's clemency request. There is no mention in the CA's action of any specific recommendation from CAPT O or CDR M.

We don't know whether any members submitted clemency recommendations. Due to the statements of CAPT O and CDR M that they preferred not to submit their recommendations through CDC or had already sent a recommendation directly to the SJA, compounded by the SJA's limited comment that there was "no clemency recommendation by the sentencing authority made *in conjunction with the announced sentence*,"[13] the defense had no way to know the CA had not seen or considered the purported recommendations from CAPT O and CDR M. Since the SJA and CA were aware of the e-mails in which the two members indicated that they would or had submitted such recommendations, and there being no evidence in the record to indicate the SJA or CA took steps to contact either member and resolve the apparent discrepancy, under the specific facts presented, we find it was error to leave the question answered.

Given the members' role in the proceedings, any clemency recommendation from them would likely carry particular weight with the CA. The record here indicates two senior officer members either intended to or did provide such a recommendation. Accordingly, we find the appellant has met the very low threshold of "some colorable showing of possible prejudice." We will provide relief in our decretal paragraph.

### Sentence Reassessment

As we are setting aside part of the conviction, we will reassess the sentence in accordance with the principles set forth in *United States v. Moffeit*, 63 M.J. 40, 41 (C.A.A.F. 2006), *United States v. Cook*, 48 M.J. 434, 438, (C.A.A.F. 1998), and *United States v. Sales*, 22 M.J. 305, 307-09 (C.M.A. 1986). We find no "'dramatic change in the penalty landscape' [which] gravitates away from the ability to reassess" the sentence in this case. *United States v. Buber*, 62 M.J. 476, 479 (C.A.A.F. 2006) (quoting *United States v. Riley*, 58 M.J. 305, 312 (C.A.A.F. 2003)). For the offenses of which the appellant was convicted, the maximum punishment included ten years' confinement, total forfeiture of pay and allowances, and a

---

[13] SJAR at 1 (emphasis added).

19

dismissal.  Removing Charge I from the calculation only reduces the maximum authorized confinement to eight years.  The sentence awarded by the court-martial was limited to a dismissal, a sentence far removed from the potential maximum.

Additionally, the facts underlying the affirmed charges and specifications provide ample justification for the sentence the members awarded.  The appellant, a senior naval officer, misused his rank and position to sexually abuse a junior civil servant in the workplace.  Accordingly, we are confident that the members would have imposed the previously adjudged sentence of a dismissal.

## Conclusion

The findings as to Specification 2 of Charge I and Charge I are set aside and that charge and specification are dismissed. The CA's action dated 16 January 2014 is set aside and the record of trial is returned to the Judge Advocate General of the Navy for remand to an appropriate CA for a new post-trial recommendation and action.[14]  Thereafter the record will be returned to the Court for completion of appellate review. *Boudreaux v. U.S. Navy-Marine Corps Court of Military Review*, 28 M.J. 181 (C.M.A. 1989).

Senior Judge MCFARLANE and Judge BRUBAKER concur.

For the Court

R.H. TROIDL
Clerk of Court

---

[14] The CA's Action of 16 January 14 is incorrect in that it fails to reflect the merger of various specifications under Charge II, as reflected in AE LXXXII (the cleansed charge sheet).  While the error is mooted by our decree, we point this out so that any future order will not repeat the mistake.