UNITED STATES, Appellee

v.

Walter S. COLEMAN, Specialist
U.S. Army Appellant

No. 13-0007

Crim. App. No. 20100417

United States Court of Appeals for the Armed Forces

Argued March 12, 2013

Decided May 9, 2013

STUCKY, J., delivered the opinion of the Court, in which ERDMANN and RYAN, JJ., and COX, S.J., joined. BAKER, C.J., filed a separate opinion concurring in the result.


Counsel


For Appellant: Captain Robert N. Michaels (argued); Colonel Patricia A. Ham and Major Richard E. Gorini (on brief).


For Appellee: Captain Sasha N. Rutizer (argued); Major Catherine L. Brantley, Major Robert A. Rodriguez, and Captain Bradley M. Endicott (on brief).


Military Judge: Charles D. Hayes


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Coleman, No. 13-0007/AR

Judge STUCKY delivered the opinion of the Court.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). We granted review to consider whether the military judge erred by failing to grant a defense motion for mistrial based on the trial counsel's failure to disclose to the defense that the staff judge advocate (SJA) had agreed to recommend the convening authority (CA) reduce a co-accused's sentence in exchange for his testimony against Appellant. We hold that the military judge did not abuse his discretion in denying the motion for mistrial as the Government's error in failing to notify the defense of the co-accused's agreement with the SJA was harmless beyond a reasonable doubt.

I. Posture of the Case

A general court-martial consisting of officer and enlisted members convicted Appellant, contrary to his pleas, of causing DD to engage in a sexual act by using strength and power sufficient that DD could not avoid or escape the sexual conduct, and adultery. Articles 120 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 934 (2006). Appellant was sentenced to a dishonorable discharge, confinement for ten

years, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The CA reduced the sentence to confinement to five years but otherwise approved the sentence. The United States Army Court of Criminal Appeals (CCA) set aside the adultery conviction because the specification failed to include the terminal element of the offense but otherwise affirmed the findings and sentence. United States v. Coleman, No. 20100417, 2012 CCA LEXIS 245, at *18-*19, 2012 WL 2756004, at *6 (A. Ct. Crim. App. July 9, 2012) (unpublished).

## II. Background

Appellant and Private First Class (PFC) Jarvis Pilago were charged with sexually assaulting DD, PFC Pilago's neighbor, after she had been drinking alcohol with them at a neighborhood gathering. When interviewed by military investigators, Appellant invoked his right against self-incrimination, while PFC Pilago made a lengthy statement incriminating both himself and Appellant. On March 19, 2010, through counsel, Appellant submitted a discovery request to the Government, asking for disclosure of any immunity or leniency pertaining to any witnesses. "Specifically the defense is requesting immediate disclosure of any agreement with PFC Jarvis Joshua Pilago to cooperate with the government in any way." The request for discovery was "a continuing request." The Government response, undated, stated as follows: "Not applicable at this time. The

Government will comply with the defense request if it becomes relevant."

PFC Pilago's trial concluded on May 12, 2010, the day before Appellant's trial commenced. He was convicted of adultery and forcible sodomy of DD. His sentence included a dishonorable discharge and confinement for forty-two months. PFC Pilago's defense counsel approached the SJA and obtained his oral agreement to recommend to the CA that PFC Pilago be granted twelve months of clemency in exchange for his truthful testimony at Appellant's trial, which was scheduled to begin the following day, May 13.

After this verbal agreement was reached but before PFC Pilago testified, the trial counsel told the defense counsel that "there was no immunity agreement, nothing in writing and 'negotiations had kind of been reached.'" The defense counsel interviewed PFC Pilago. At the Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2006), hearing held before PFC Pilago testified in Appellant's case, the defense counsel asked if there was a deal in place. The assistant trial counsel answered, "No, there's nothing in writing."

The defense counsel moved the military judge to prevent PFC Pilago from testifying that he had been convicted or to provide any details about his sentence. Later, he corrected himself, noting that the motion was limited to "what he was convicted of,

4

not the overall conviction.  A conviction would be appropriate
impeachment for the defense, but not necessarily the specific
act that he was convicted of."  The Government agreed to abide
by the defense request.

PFC Pilago testified for both the prosecution and the
defense in Appellant's trial.  For the prosecution, PFC Pilago
testified that while he, Appellant, and DD were engaged in sex
in her bedroom, DD said "Stop"; that he (PFC Pilago) had twice
told Appellant, "Dude, she said stop"; and that Appellant had
replied "just to keep going."  During cross-examination,
Appellant's defense counsel focused on DD's ability to consent
to the sexual acts despite her alcohol consumption.  He did not
cross-examine PFC Pilago about DD's demand for them to stop, nor
about his recent court-martial conviction.  On direct
examination for the defense, PFC Pilago testified that he,
Appellant, and DD had had consensual sex in PFC Pilago's bedroom
and backyard shed earlier on the same evening.

In his post-trial submissions, Appellant asked the CA to
grant him clemency, inter alia, because the only witness to
corroborate DD's testimony was PFC Pilago and the defense had
not been provided written notification that the SJA had agreed
to recommend clemency for him in exchange for his testimony
against Appellant.  The SJA recommended that the CA order a

post-trial hearing to resolve the issue.  The CA ordered the hearing on December 14, 2010.

After the post-trial hearing, the military judge determined that the SJA's promise to recommend clemency in exchange for PFC Pilago's testimony "was favorable and material to defense trial preparation and should have been disclosed."  Nevertheless, he concluded that the Government had sustained its burden to establish that the error was harmless beyond a reasonable doubt.

### III.  The Law

A military judge has discretion to "declare a mistrial when such action is manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings." Rule for Courts-Martial (R.C.M.) 915(a).  "We will not reverse a military judge's determination on a mistrial absent clear evidence of an abuse of discretion."  United States v. Ashby, 68 M.J. 108, 122 (C.A.A.F. 2009).

The failure of the trial counsel to disclose evidence that is favorable to the defense on the issue of guilt or sentencing violates an accused's constitutional right to due process. Brady, 373 U.S. at 87; accord Smith v. Cain, 132 S. Ct. 627, 630 (2012).  The Supreme Court reviews all such cases for harmless error -- whether "there is a 'reasonable probability that, had the evidence been disclosed, the result of the proceeding would

have been different.'"  Smith, 132 S. Ct. at 628–29 (quoting Cone

v. Bell, 556 U.S. 449, 469–70 (2009)).

A military accused also has the right to obtain favorable

evidence under Article 46, UCMJ, 10 U.S.C. § 846 (2006),[1] as

implemented by R.C.M. 701–703.[2]  This Court has held that Article

46 and its implementing rules provide greater statutory

discovery rights to an accused than does his constitutional

---

[1] "The trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe."  Article 46, UCMJ.

[2] The President's rules provide that:

> (1) Each party is entitled to the production of evidence which is relevant and necessary.  R.C.M. 703(f).

> (2) Upon the request of the defense, the government must produce any documents that are in the possession of military authorities and are "material to the preparation of the defense or are intended for use by the trial counsel as evidence in the prosecution case-in-chief at trial."  R.C.M. 701(a)(2)(A).

> (3) The trial counsel must disclose to the defense the existence of evidence known to the trial counsel which reasonably tends to:

>> (A) Negate the guilt of the accused of an offense charged;

>> (B) Reduce the degree of guilt of the accused of an offense charged; or

>> (C) Reduce the punishment.

> R.C.M. 701(a)(6).

United States v. Graner, 69 M.J. 104, 107 (C.A.A.F. 2010).

7

right to due process.  United States v. Roberts, 59 M.J. 323, 327 (C.A.A.F. 2004); see United States v. Hart, 29 M.J. 407, 409-10 (C.M.A. 1990).  As a result, we have established two categories of disclosure error:  (1) "cases in which the defense either did not make a discovery request or made only a general request for discovery"; and (2) cases in which the defense made a specific request for the undisclosed information.  Roberts, 59 M.J. at 326–27.  For cases in the first category, we apply the harmless error standard.  Hart, 29 M.J. at 410; see United States v. Behenna, 71 M.J. 228, 238 (C.A.A.F. 2012).  For cases in the second category, we apply the heightened constitutional harmless beyond a reasonable doubt standard.  Roberts, 59 M.J. at 327; Hart, 29 M.J. at 410 (dictum).  Failing to disclose requested material favorable to the defense is not harmless beyond a reasonable doubt if the undisclosed evidence might have affected the outcome of the trial.  See Hart, 29 M.J. at 409 (dictum).

## IV.  Discussion

"Our review of discovery/disclosure issues utilizes a two-step analysis:  first, we determine whether the information or evidence at issue was subject to disclosure or discovery; second, if there was nondisclosure of such information, we test the effect of that nondisclosure on the appellant's trial."  Roberts, 59 M.J. at 325.  The Government rightly concedes that

Appellant specifically requested disclosure of any agreement with PFC Pilago and the requested matter was favorable to the defense, should have been disclosed, and was not disclosed. Therefore, the question before us is whether the Government's failure to disclose the specifically requested information was harmless beyond a reasonable doubt.

PFC Pilago's direct testimony for the Government was very brief -- one and one-half pages. The trial counsel asked what he and Appellant did in DD's bedroom on the night of July 26, 2009 -- he had his penis in DD's mouth while Appellant was engaged in intercourse with her. Trial counsel then asked what DD said. PFC Pilago testified that she said "Stop"; PFC Pilago told Appellant that DD had said to stop, but Appellant said to keep going. This evidence corroborated DD's testimony that Appellant had sex with her[3] and that she had told both of them to stop, and they did not.

For the defense, PFC Pilago testified that earlier in the evening, Appellant had performed oral sex on a consenting DD in PFC Pilago's bedroom while she performed oral sex on PFC Pilago; the threesome engaged in consensual sexual acts in a shed; they later went to DD's home, which was across the street; that DD was not so intoxicated she could not cross the street

---

[3] This was further corroborated by medical evidence that DD suffered a vaginal tear.

unassisted, could carry on a conversation without slurring her words, and unlock the door to her home, all without stumbling or fumbling.

In his closing argument, the defense counsel argued that the sexual relationship between Appellant and DD was consensual. He asserted that: (1) DD had a motive to lie -- her husband was deployed and she did not want to lose him, especially with a newborn who would need health insurance; (2) DD was not substantially incapacitated (a separate charge of which Appellant was acquitted that apparently was charged in the alternative to rape by force); (3) that Appellant did not engage in sexual acts with DD in her bedroom; and (4) that DD's previous sexual encounters with Appellant that evening were consensual. The defense counsel also argued that it was convenient for DD to not remember the consensual sex that she had with Appellant and PFC Pilago earlier that evening. Defense counsel then discussed PFC Pilago's motive to lie. He drew attention to the accomplice instruction the military judge had given concerning PFC Pilago's testimony:

> [The military judge] said, in essence, be wary of
> accomplice testimony because of the benefits that
> someone may receive from them; the benefits of
> immunity; and the benefits of potentially receiving
> some sort of clemency from the Commanding General in
> his own case. I am not asking the panel to do
> something unreasonable. So, what I'll tell you is
> that Jarvis Pilago testified to a lot of different
> things. I'm asking you to consider the evidence that

he gave to the government is the evidence that is going to help him with his clemency.  It's the evidence that helped the government . . . .  Panel members, there was no sex in [DD's] bedroom.  PFC Pilago told you what he had to tell you to get his clemency.  [DD] made up the bedroom story to avoid telling her husband she cheated on him.

The defense knew that PFC Pilago had been convicted and sentenced for the same offenses with which Appellant was charged.  The defense counsel could have impeached PFC Pilago with the conviction and punishment but chose not to do so. Nevertheless, Appellant's counsel did argue that PFC Pilago was testifying because he wanted clemency from the CA for his participation in the offenses, and PFC Pilago's motive to misrepresent was self-evident to the court members.  It is unclear how knowing that the SJA had agreed to recommend that the CA grant PFC Pilago clemency in exchange for his testimony would have caused the defense counsel to change strategy or tactics or led to a different result.  It would not have affected either the defense counsel's ability to cross-examine PFC Pilago or his closing argument.

Although not necessary for disposition of this case, the Government also seems to have been prepared to counter any attempt by the defense to impeach the credibility of PFC Pilago with evidence that he had (1) been convicted of sexual misconduct for the same incident that formed the basis of

Appellant's charges and (2) made a prior statement to law enforcement that was consistent with his testimony at trial.

A prior consistent statement is not hearsay if it is "offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive."  Military Rule of Evidence (M.R.E.) 801(d)(1)(B).

> This Court has consistently interpreted the rule to require that a prior statement, admitted as substantive evidence, precede any motive to fabricate or improper influence that it is offered to rebut. Where multiple motives to fabricate or multiple improper influences are asserted, the statement need not precede all such motives or inferences, but only the one it is offered to rebut.

United States v. Allison, 49 M.J. 54, 57 (C.A.A.F. 1998) (citations omitted).

PFC Pilago's prior consistent statement was made well before his counsel approached the SJA to make a deal.  It is most likely that, had the defense tried to impeach PFC Pilago with the agreement, the prior consistent statement would have been admitted to rebut any defense contention that he had motive to alter his testimony to obtain clemency.  Even if the military judge would have refused to admit the prior consistent statement for the truth of the matter asserted, it still would have been admissible "simply to corroborate, or rehabilitate, the in-court testimony of a witness, regardless of whether it qualifies for exception from the hearsay rule under Fed. R. Evid.

801(d)(1)(B)."  David F. Binder, Hearsay Handbook, 4th § 40.1, at 1052 (2012-13 ed.) (Fed. R. Evid. 801(d)(1)(B) is substantially the same as M.R.E. 801(d)(1)(B)); see 2 Stephen A. Saltzburg et al., Military Rules of Evidence Manual § 801.02[6][c], at 8-27 (7th ed. 2011); United States v. Simonelli, 237 F.3d 19, 27 (1st Cir. 2001); United States v. Ellis, 121 F.3d 908, 919 (4th Cir. 1997).

In conclusion, while the conduct of the prosecution in not disclosing the oral agreement between PFC Pilago's counsel and the SJA was, at a minimum, negligent, and certainly violated Brady, Article 46, and R.C.M. 701–703,[4] the Government has established that under the circumstances of this case its failure was harmless beyond a reasonable doubt -- disclosure would not have affected the outcome of the trial.  Therefore, the military judge did not abuse his discretion in refusing to declare a mistrial.

## V.  Judgment

The judgment of the United States Army Court of Criminal Appeals is affirmed.

---

[4] We disagree with the military judge's suggestion that the failure to disclose was somehow mitigated because the experienced defense counsel could have divined that PFC Pilago was testifying as a result of a deal with the Government.  The defense counsel's experience does not relieve the Government of its burden to disclose under Brady, Article 46, UCMJ, and R.C.M. 701–703.

United States v. Coleman, No. 13-0007/AR

BAKER, Chief Judge (concurring in the result):

I agree with the majority's analysis regarding the threshold application of Brady v. Maryland, 373 U.S. 83 (1963), and Article 46, Uniform Code of Military Justice, (UCMJ), 10 U.S.C. § 846 (2006), to this case. Pilago's oral agreement with the prosecutor for a favorable clemency recommendation was clearly favorable and material to the defense. It should have been disclosed to Appellant, regardless of whether he expressly requested it, although he did, and regardless of whether Appellant knew Pilago had been convicted and sentenced for the same offense. However, unlike the majority, I would not rely on evidence that was not admitted, and potentially not admissible, in determining whether the failure to disclose was harmless beyond a reasonable doubt. Cf. United States v. Holt, 58 M.J. 227, 232 (C.A.A.F. 2003) ("Article 66(c) limits the Courts of Criminal Appeals to a review of the facts, testimony, and evidence presented at the trial, and precludes a Court of Criminal Appeals from considering extra-record matters when making determinations of guilt, innocence, and sentence appropriateness." (citations and internal quotation marks omitted)); United States v. Duffy, 3 C.M.A. 20, 23, 11 C.M.R. 20, 23 (1953) (holding that the military justice system does not "permit appellate reviewing authorities to cast beyond the limits of the record for 'evidence' with which to sustain a

conviction."); United States v. Whitman, 3 C.M.A. 179, 180, 11 C.M.R. 179, 180 (1953) ("look[ing] outside the record for evidence of guilt" is "reversible error"). In addition, I hesitate to assume that actual knowledge of a clemency agreement can never enhance the effectiveness of a cross-examination or closing statement.

First, the prior consistent statement made by Pilago was marked for identification only at the outset of trial. But it was neither admitted nor referred to at trial, nor discussed at the post-trial Article 39(a), UCMJ, 10 U.S.C. § 39(a) (2006), session. See R.C.M. 1103(b)(3) ("The following matters shall be attached to the record: . . . (B) Exhibits . . . which were marked for and referred to on the record but not received in evidence." (emphasis added)). The preliminary marking of a document for administrative convenience does not make that document part of the evidentiary record at trial or on appeal. Arguments can be made on both sides of the ledger as to whether this evidence might have come in, if it had been offered as evidence. But it was not offered, and therefore the military judge never conducted the necessary M.R.E. 401 and 403 analyses in order to admit the evidence. Nor was the matter appealed to this Court by either party. Therefore, it seems speculative, if not unfair, for this Court to now incorporate this prior statement into its harmless error analysis.

Second, an agreement to recommend clemency to a co-actor offers a qualitatively different opportunity to cross-examine and expose bias than does the knowledge alone that a witness was a co-actor and might hope for clemency. Contrast United States v. Coleman, __ M.J. __ (11) (C.A.A.F. 2013) (knowledge of an actual agreement with the witness "would not have affected either the defense counsel's ability to cross-examine PFC Pilago or his closing argument."). Disclosure of such an agreement would allow defense counsel to present evidence, and not merely argument, of a witness's motive to testify for the government. The distinction could affect the outcome of a trial.

Nonetheless, I concur with the majority because there is no doubt that the disclosure would not have affected the outcome in this case. Among other things, the military judge instructed members on the inherent risks of relying on accomplice testimony. The victim, DD, testified and her testimony was substantiated by medical evidence. In addition, defense counsel cross-examined Pilago and thus was able to relate the military judge's accomplice instruction to Pilago's possible hope for clemency. Finally, Pilago's bias would have been self-evident to members in a case of this sort.

Therefore, I concur with the majority's finding that the erroneous failure to disclose the accomplice's agreement with the SJA in this case was harmless beyond a reasonable doubt.

3