**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Senior Airman PATRICK A. SHEA**
**United States Air Force**

**ACM S32225**

**21 May 2015**

Sentence adjudged 26 February 2014 by SPCM convened at Scott Air Force Base, Illinois. Military Judge: Joshua E. Kastenberg (sitting alone).

Approved Sentence: Bad-conduct discharge, confinement for 4 months, reduction to E-1, and a reprimand.

Appellate Counsel for the Appellant: Colonel Randall G. Snow and Major Isaac C. Kennen.

Appellate Counsel for the United States: Major Meredith L. Steer and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

TELLER, Judge:

The appellant was convicted, in accordance with his pleas, by a military judge sitting alone of one specification of disobeying a superior commissioned officer and two specifications of assault consummated by a battery in violation of Articles 90 and 128, UCMJ, 10 U.S.C. §§ 890, 928. He was also convicted, contrary to his pleas, of one specification of assault consummated by a battery and one specification of

communicating a threat in violation of Articles 128 and 134, UCMJ, 10 U.S.C. §§ 928, 934.

The court sentenced him to a bad-conduct discharge, 4 months of confinement, forfeiture of $750.00 pay per month for 4 months, reduction to E-1, and a reprimand. The convening authority approved the bad-conduct discharge, confinement, reduction, and reprimand. He did not approve the adjudged forfeitures, and he waived the mandatory forfeitures under Article 58b, UCMJ, 10 U.S.C. § 858b, for the benefit of the appellant's dependent spouse and children.

The appellant argues that the government failed to disclose certain statements in the victim's medical records that were favorable to the defense.[1] We find that the failure to produce the records was prejudicial error as regards Specification 3 of Charge I. We set aside the conviction on that specification and reassess the sentence. We affirm the remainder of the findings.

*Background*

The charges in this case arose out of an abusive relationship between the appellant and his wife. The appellant was arrested in November 2013 after striking his wife and threatening her with a knife. For this incident, the appellant was found guilty of assault consummated by a battery and communicating a threat. In addition to the November 2013 incident, the appellant was also convicted of assaulting his wife twice during the fall of 2011. He was acquitted of an additional assault alleged to have occurred during that period.

Prior to trial, defense counsel sought production of the victim's mental health records. The government asserted the victim's privilege under Mil. R. Evid. 513 and provided the military judge a sealed package of records for in camera review. Although the military judge's ruling described the records as the victim's mental health records, the package was actually comprised of a mixture of medical and mental health records. Included in the medical records were treatment notes related to the victim's obstetrics examinations between 31 May 2012 and 25 October 2012 while she was pregnant with the couple's second child and a 29 October 2013 visit for routine care. Nine of these records included an annotation reflecting the absence of any history of abuse. Some explicitly indicated that the victim denied any such history while others simply stated there was no such history. These annotations were not provided to the defense by the military judge.

---

[1] This case was originally submitted to the court for review under Article 66(c), UCMJ, 10 U.S.C. § 866, on its merits. The court specified the following issue for briefing: "Whether the annotation in the alleged victim's medical records 'Pt states no hx of abuse/neglect'" constituted a matter favorable to the defense that should have been disclosed either by the government or by the military judge." The appellant subsequently filed a supplemental assignment of errors addressing similar annotations in other medical records contained in Appellate Exhibit XII.

The annotations in the medical records are inconsistent with other evidence in the case, specifically the testimony of the appellant's wife. She testified at trial to three separate assaults that occurred prior to her 31 May 2012 appointment. In addition, the appellant received nonjudicial punishment on 23 September 2013 for three other assaults on his wife, one in June 2013, one sometime between 1 April and 31 May 2013, and a third sometime between 1 January 2013 and 24 June 2013. All three of these assaults, in addition to the alleged assaults in the fall of 2011, happened prior to her routine appointment on 29 October 2013.

*Discovery of Medical Record Annotations*

The appellant asserts that the annotations in the medical records constituted evidence favorable to the defense that should have been disclosed.

We review a military judge's decision on a request for discovery for abuse of discretion, which occurs when his findings of fact are clearly erroneous, when he is incorrect about the applicable law, or when he improperly applies that law. *United States v. Roberts*, 59 M.J. 323, 326 (C.A.A.F. 2004). The military judge issued a written ruling on the defense motion for production of the mental health records. He made limited findings of fact, including a determination that "[t]here were no statements of an exculpatory nature maintained in the mental health [or] medical records." He then applied Mil. R. Evid. 513 (which covers psychotherapist records) to the records as a whole. Noting there were eight codified exceptions to Mil. R. Evid. 513, he found the only applicable exception was for records that were constitutionally required to be disclosed. He found that none of the records met this exception and did not disclose any of the records to the defense.

Whether information in the records was "material to the preparation of the defense" under R.C.M. 701(a)(2)(B) is a question of law that we review de novo. *Id.* "A military accused . . . has the right to obtain favorable evidence under Article 46, UCMJ . . . as implemented by R.C.M. 701-703 . . . [which] provide greater statutory discovery rights to an accused than does his constitutional right to due process." *United States v. Coleman*, 72 M.J. 184, 186–87 (C.A.A.F. 2013). *Roberts* established a two-step analysis for claims of nondisclosure of evidence potentially favorable to the defense. *Roberts*, 59 M.J. at 325. We first determine whether the information or evidence at issue was subject to disclosure or discovery and, if so, we then test the effect of the nondisclosure on the appellant's trial. *Id.*

Our superior court has created two categories of disclosure error with different standards for assessing the effect of nondisclosure of information favorable to the defense. *Coleman*, 72 M.J. at 187. If the defense made a specific request for the undisclosed information and it is favorable to the defense, the appellant will be entitled to relief unless the government can show that nondisclosure was harmless beyond a reasonable doubt. *Id.*; *Roberts*, 59 M.J. at 327. If the defense either made only a general

request for discovery or made no discovery request at all, we apply the harmless error standard, and the appellant will be entitled to relief only by showing that "there is a 'reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.'" *Coleman*, 72 M.J. at 186 (citing *Smith v. Cain*, 132 S. Ct. 627, 628 (2012); *see also Roberts*, 59 M.J. at 327. These determinations must be made in light of the entire record. *United States v. Morris*, 52 M.J. 193, 197 (C.A.A.F. 1999).

We find that the annotations in the records were subject to discovery. Such medical records are covered by the disclosure requirements of R.C.M. 701(a)(2)(B) when they are material to the defense. *See United States v. Stewart*, 62 M.J. 668, 671 (A.F. Ct. Crim. App. 2006). Referring to the military judge's pretrial ruling, the government argues that "the alleged statements appear to be [the victim's] answers to the standard questionnaire asked at military medical appointments. The statements do not 'contradict her testimony, contain evidence of malfeasance towards Appellant, or reveal a reason to fabricate.'" We disagree. Although that context may offer the government potential avenues to argue the statements should be accorded little weight, there is no question that the annotations are evidence of prior inconsistent statements by the prosecution's primary witness. The annotations were material to the defense for the purposes of R.C.M. 701(a)(2)(B).

We acknowledge that the records in question were submitted under seal, and were not subject to trial counsel review.[2] However, in light of the government's intended use at trial of photographs of the victim's injuries, medical records that might reference those injuries are no less an obvious source of potential exculpatory information than investigative files. Those records should have been reviewed by the trial counsel in the exercise of due diligence. *See, e.g.*, *United States v. Jackson*, 59 M.J. 330, 334 (C.A.A.F. 2004).

While we recognize that the military judge's knowledge of the case was more limited than that of trial counsel, we nonetheless find that his decision not to disclose the medical record annotations was also error. By applying the heightened "constitutionally required" disclosure standard for mental health records to the medical records, he was influenced by a mistaken view of the law. His finding of fact that there were no contradictory statements by the victim in the records was also clearly erroneous.

Because the records should have been disclosed either as a result of trial counsel's independent examination of the medical records or as a result of the in camera review, we proceed to the second phase of the analysis, testing for harm. The record in this case is silent on whether medical records, as opposed to mental health records, were specifically

---

[2] This case illustrates the importance of trial counsel involvement with, and advice to, personnel screening medical and mental health records so that records subject to privilege under Mil. R. Evid. 513 are properly segregated. Had the medical records not been included with mental health records provided under seal, trial counsel may have identified the inconsistent annotations prior to trial.

requested by the defense during the discovery process. We may still resolve the issue, however, if we find that the outcome of our prejudice analysis would be the same under both standards.

### 1. Effect on the Findings Phase of Trial

If the defense did not specifically request the medical records of the victim's wife, the appellant is only entitled to relief if there was a "reasonable probability" that, had the evidence been disclosed, the result of the findings phase would have been different. *Coleman*, 72 M.J. at 186–87. The appellant pled guilty unconditionally to two specifications of assault consummated by a battery for striking his wife during the fall of 2011 and in November 2013. The appellant concedes that the failure to disclose the records does not affect the findings as to those specifications.

The appellant pled not guilty to assaulting his wife during the fall of 2011 by striking her on the hip with a baby bottle. We find there was a reasonable probability that, had the evidence been disclosed, the result as to this specification would have been different. The evidence on that specification was comprised solely of the victim's testimony and was remarkably brief, as noted by trial defense counsel's argument:

> There is very little evidence before this Court with respect to that specification and the government has not met their burden with respect to that specification. There is no evidence before this Court about whether she got hit with the bottle by accident, whether it was intentional, nothing along those lines. We don't know when it happened. There was literally one or two sentences, if even that, said in passing about that by [the victim] on direct examination and no further evidence was offered on that specification.

Moreover, the military judge found the appellant not guilty of another alleged assault during that same timeframe when the victim's similarly brief testimony was challenged through cross-examination of a third witness present during that altercation. This finding indicates that the military judge viewed the victim's testimony regarding the fall 2011 allegations with some skepticism.

It is possible that, as the government suggests, the military judge would have discounted the denials as insubstantial replies to routine medical questions. We find it more likely that the military judge would have found the denials of the precise conduct alleged in the specification substantially undermined the victim's testimony at trial. It could reasonably have caused him to doubt whether any harmful or offensive contact was intentional, or caused him to question whether the contact occurred at all. Either conclusion by the military judge would have resulted in a different outcome. We

therefore find a "reasonable probability" that the findings for this specification would have been different if this information had been disclosed.

We next turn to the question of whether the government has demonstrated that the nondisclosure was harmless beyond a reasonable doubt, the heightened standard of prejudice for specifically requested records. "Failing to disclose requested material favorable to the defense is not harmless beyond a reasonable doubt if the undisclosed evidence might have affected the outcome of the trial." *Coleman*, 72 M.J. at 187. Having found the lack of disclosure raised a reasonable probability of a different result, we necessarily find that the result might have been different. We are not satisfied beyond a reasonable doubt that the nondisclosure was harmless as to this specification.

Because we find that failure to disclose the annotations affected the outcome as to Specification 3 under both standards, we accordingly set aside that conviction.

### 2. *Effect on the Presentencing Phase of Trial*

The appellant also argues that the failure to disclose the annotations was not harmless in sentencing for the assaults he pled guilty to, and asks that we reassess his sentence accordingly. Specifically, the appellant argues that disclosure would have allowed him to provide testimony "to show that [the victim] did not initially believe [the a]ppellant's conduct constituted 'abuse' or 'neglect' and did not make her feel unsafe or threatened."

Although the appellant asks only for a reassessment of sentence, we have an Article 66(c), UCMJ, duty to approve only so much of the sentence as we find "correct in law" and which "should be approved." Accordingly, we must also examine whether the failure to disclose the annotation so affected the sentence as to require a rehearing.

We first consider whether the government has established, beyond a reasonable doubt, that the failure to disclose the annotations in the medical records did not affect the sentence. *See Coleman*, 72 M.J. at 187.

Because the victim's statements in her medical records predated the November 2013 assault, these statements are only directly relevant to the two assaults which occurred in the fall of 2011. Neither incident was specifically mentioned in the victim's sentencing testimony. Instead, the facts and circumstances related to one of the specifications were admitted through the appellant's statements during the providence inquiry. For the baby bottle assault, the government was apparently also content to rely on the victim's brief mention of the incident during her findings testimony to provide the facts and circumstances of that offense.

The assertions attributed to the victim in the medical records would not have had a material impact on the victim's general credibility during sentencing. One potential use

of the evidence would have been to argue that the victim was exaggerating her sentencing testimony in light of her failure to mention the abuse during her medical visits. The victim's testimony, however, was measured and composed, focusing on the effect of the November 2013 assault. Accordingly, we discern no reasonable grounds to find that she exaggerated the effect of the assaults that took place in 2011. She also testified in findings that she slapped the appellant, giving rise to an alternative explanation for her denials of abuse—that she wanted to avoid scrutiny of her own conduct. Finally, we note that during cross-examination of the victim in the presentencing phase, trial defense counsel elicited testimony that the victim had an "active social network," implying even without the medical records that she could have sought help if the assaults made her feel unsafe or threatened.

Given this, we find beyond a reasonable doubt that the failure to disclose the annotations—even considering that there was a reasonable probability that the appellant would have been acquitted on Specification 3 of Charge I—did not affect the overall sentence.[3] Accordingly, we also find that there was no reasonable probability that the sentence would have been different. Because the result would not have been affected under either standard, we find that rehearing on the basis of the nondisclosure itself is not appropriate.

*Sentence Reassessment*

Despite our finding that a rehearing is not required specifically on the basis of the nondisclosure of evidence, before a sentence reassessment would be appropriate, further analysis must be done to determine whether or not the case must still be sent back for rehearing in light of our court setting aside Specification 3 of Charge I. In determining whether to reassess a sentence or order a rehearing, we consider the totality of the circumstances with the following as illustrative factors: (1) dramatic changes in the penalty landscape and exposure, (2) the forum, (3) whether the remaining offenses capture the gravamen of the criminal conduct, (4) whether significant or aggravating circumstances remain admissible and relevant, and (5) whether the remaining offenses are the type with which we as appellate judges have the experience and familiarity to reliably determine what sentence would have been imposed at trial. *United States v. Winckelmann*, 73 M.J. 11, 15–16 (C.A.A.F. 2013). This court has "broad discretion" when reassessing sentences. *Id.* at 12.

The preponderance of the factors weigh in favor of reassessment. There was no change to the penalty landscape. The maximum punishment remains capped at the jurisdictional maximum for a special court-martial and the type of offenses at issue remained unchanged. The trial was before a military judge alone, improving our ability to gauge how the change might have affected his sentencing deliberations. *Id.* at 16.

---

[3] Because of the special court-martial forum, there would have been no change in the maximum punishment had the military judge acquitted the appellant of Charge I, Specification 3.

Most importantly, the record indicates that the baby bottle specification was not a significant factor in sentencing. It was not mentioned during the sentencing phase either in testimony or in argument. The government instead emphasized the victim's injuries from assaults for which the appellant had been given nonjudicial punishment in 2013. Finally, the remaining offenses are ones which are routinely before courts-martial.

In light of the complete absence of any reference to the specification in sentencing, and its relative lack of severity compared to the other offenses, we find that we can reliably reassess the appellant's sentence and reassess it to be the same as the adjudged sentence.

*Conclusion*

The finding of guilty of Specification 3 of Charge I, is set aside. All other findings are affirmed. The findings, as modified, and the sentence, as reassessed, are correct in law and fact and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). They are accordingly,

**AFFIRMED**.

FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court