Chief Judge ERDMANN,
dissenting.
Two of the government’s witnesses in this case had been confidential informants for the Air Force Office of Special Investigations and had informed on Claxton during the investigative stage of the case. At trial, the government represented to the panel that the two witnesses had been friends of Clax-ton but, because of their repugnance for what he was accused of, were willing to testify against their former friend. During the entirety of the trial, government counsel did not disclose to the court or the defense that the two had been confidential informants. Had one of the confidential informants not “spilled the beans” during a post-trial media interview, their status may never have been publically known. Before this court, the government concedes that a Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), violation occurred and that the standard for determining prejudice is whether the error was harmless beyond a reasonable doubt. As I believe that the Brady violation was not harmless beyond a reasonable doubt, I respectfully dissent from the majority opinion and would reverse the United States Air Force Court of Criminal Appeals and return the case for a new trial.[1]
The majority cites the correct standard for analyzing prejudice resulting from a Brady violation where a specific discovery request has been made. See United States v. Coleman, 72 M.J. 184, 187 (C.A.A.F. 2013) (“Failing to disclose requested material favorable to the defense is not hamless beyond a reasonable doubt if the undisclosed evidence might have affected the outcome of the trial”). However, the majority then takes a somewhat narrow view and fails to consider the entire scope of the potential'prejudice in this case.
It is difficult to fault the majority’s analysis in which they note that the testimony of the confidential informants was either “relatively unimportant” or “cumulative” with the testimony of other witnesses or Claxton’s own admissions. However, I believe there is a bigger picture that the majority does not address. In nondisclosure eases, we have considered the cumulative effect of the non *363 disclosure rather than merely speculating as to what the result would have been without the confidential informants’ testimony. See United States v. Stellato, 74 M.J. 473, 490 (C.A.A.P. 2015). In conducting this assessment, we have adopted the following analysis: (1) whether the nondisclosure hampered or foreclosed a strategic option; (2) whether the nondisclosure hampered the ability to prepare or present its case; (3) whether the nondisclosure substantially influenced the factfinder; and (4) whether the nondisclosure would have allowed the defense to rebut evidence more effectively. Id. (citations omitted). This court “need not conclude that Appellant’s defense would have succeeded. Instead the inquiry should focus on whether the military judge’s ruling essentially deprived Appellant of [his] best defense that may have tipped the credibility balance in Appellant’s favor.” United States v. Collier, 67 M.J. 347, 356 (C.A.A.F. 2009) (alteration in original) (internal quotation marks omitted) (quoting United States v. Moss, 63 M.J. 233, 239 (C.A.A.F. 2006)). At the United States v. DuBay, 17 U.S.C.M.A 147, 37 C.M.R. 411 (1967), hearing, the defense argued that “[h]ad [they] known the full picture about [the confidential informants] [they] may have posited a different theory about what happened that night and why.”
On appeal to this court, Claxton argues that the confidential informants were not unbiased passive observers to the three charged incidents, but were government agents who played a role in creating the events leading up to each of the three alleged sexual misconduct charges. One or the other of the confidential informants was responsible for planning the events that led up to each of the incidents. Similarly, in each of the incidents, one or the other of the confidential informants invited the alleged victims to go out with the group of cadets. It was also one or both of the confidential informants that left an inebriated female alone with an intoxicated Claxton before each alleged offense. While this “set up” defense was certainly not a “slam dunk,” it may have been the best defense' available to Claxton—had he known it was available. See Collier, 67 M.J. at 356.
The nondisclosure in this ease also clearly hampered a strategic option and the defense’s ability to prepare and present its case. Stellato, 74 M.J. at 490. During the findings arguments, trial counsel emphasized the credibility of one of the confidential informants by arguing that he resisted believing that his friend, Claxton, could commit such offenses, but was ■ ultimately swayed by the strength of the evidence to believe the allegations were true. He argued to the panel, “More and more they become to be convinced, as you are convinced, that [the victim] is telling the truth.” Trial counsel also argued that one of the confidential informants himself was credible because “[he] received pretty significant punishment for underage drinking inside the dorms, This immunity doesn’t make [his] punishments go away.... It allows [him] to make sure [he] tell[s] the truth.” However, that informant testified at the DuBay hearing that, despite his statements to the contrary during the court-martial, he believed the punishments would go away and that he would not be disenrolled frorp the Air Force Academy because the infractions were accrued during his duties as a confidential informant.
Despite the government knowing that two of the witnesses were confidential informants, it deceptively leveraged the defense and the panel’s ignorance of the informants’ status to bolster the credibility of the victims and witnesses. This information hampered Claxton’s ability to prepare and present his case and, had it been disclosed, would have allowed the defense to rebut the government’s arguments more effectively. Stellato, 74 M.J. at 490.
Due to the nondisclosure, the defense was denied the ability to pursue a strategic option and present their best defense. We have no way of knowing what the effect would have been on the members had they been informed that two principal government witnesses, who had been involved in all the incidents, were government agents. Certainly it would have had some effect on their consideration of the government’s case. Had this nondisclosure been discovered at trial, the military judge would have had a variety of remedies available but, at the very least, the defense would have been given sufficient time to re-craft its defense strategy. See id. *364 (“Prejudice can arise from discovery violations when those violations interfere with an accused’s ability to mount a defense.”). Remanding this case for a new trial would simply achieve that same result.
As there is sufficient evidence in the record to show that the government’s flagrant Brady violation might have affected the outcome of the court-martial, the nondisclosure was not harmless beyond a reasonable doubt. I would reverse the Air Force Court of Criminal Appeals and remand the case for a new trial.

. I concur with the majority's comments regarding the Air Force’s gross misconduct in the prosecution of this case.