# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM S32521**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Deanna M. GORDON**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 26 November 2019

————————————

*Military Judge:* Mark F. Rosenow.

*Approved sentence:* Bad-conduct discharge, confinement for 60 days, reduction to E-1, and a reprimand. Sentence adjudged 4 January 2018 by SpCM convened at Holloman Air Force Base, New Mexico.

*For Appellant:* Major Mark C. Bruegger, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Captain Sean J. Sullivan, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, POSCH, and KEY, *Appellate Military Judges.*

Judge POSCH delivered the opinion of the court, in which Senior Judge J. JOHNSON and Judge KEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

POSCH, Judge:

In accordance with Appellant's pleas of guilty pursuant to a pretrial agreement (PTA), a special court-martial composed of a military judge found Appellant guilty of one charge and specification each of absence without leave

(AWOL), wrongful use of marijuana on divers occasions, and negligent dereliction of duty by driving a vehicle without a valid driver's license, in violation of Articles 86, 112a, and 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 912a, and 892.[1,2] The military judge sentenced Appellant to a bad-conduct discharge, confinement for three months, forfeiture of $1,066 pay per month for three months, reduction to the grade of E-1, and a reprimand. The convening authority (CA) granted clemency by disapproving the forfeitures. Consistent with the terms of the pretrial agreement, the CA approved confinement for 60 days, but otherwise approved the bad-conduct discharge, reduction in grade and reprimand as adjudged.

Appellant identifies two errors for our review: (1) whether Appellant was prejudiced by the Government's failure to disclose to Appellant that the lead investigator—a special agent of the Air Force Office of Special Investigations (AFOSI), who testified in the Government's sentencing case—received a letter of reprimand (LOR) for making a false official statement; and (2) whether the staff judge advocate's incomplete recommendation that the CA not approve Appellant's adjudged forfeitures thwarted the CA's attempt to provide meaningful clemency. We find no prejudicial error and affirm.

## I. BACKGROUND

After court adjourned, and after Appellant's release from confinement, the Defense learned that the lead investigator and witness in the Government's presentencing case, AFOSI Special Agent (SA) AG, received an LOR for disobeying a verbal no contact order and later lying about it in July 2017 prior to Appellant's trial. The trial counsel disclosed the late discovery to Appellant's trial defense counsel who sought clemency for the violation on Appellant's behalf. The staff judge advocate (SJA) subsequently recommended the CA grant clemency to account for the violation, and the CA acted in accordance with an addendum to the SJA's recommendation (SJAR) by disapproving adjudged forfeitures of pay. The errors alleged by Appellant in her assignments of error stem from the discovery violation and the SJA's alleged failure to advise the CA about the financial effect of disapproving the adjudged forfeitures of pay that Appellant sought in clemency as redress for the violation.

---

[1] All references in this opinion to the Uniform Code of Military Justice (UCMJ), Rules for Courts-Martial, and Military Rules of Evidence are to the versions found in the *Manual for Courts-Martial, United States* (2016 ed.).

[2] Appellant pleaded not guilty to a specification alleging wrongful use of cocaine, also in violation of Article 112a, UCMJ, 10 U.S.C. § 912a, which the convening authority (CA) withdrew and dismissed with prejudice after announcement of sentence.

We begin our review with the uncontested facts and circumstances of Appellant's three convictions that were presented at trial through a stipulation of fact entered into between Appellant and the trial counsel.

From early September 2017 to early November 2017, Appellant smoked marijuana multiple times each week, usually at her off-base residence in Alamogordo, New Mexico. Soon after learning that AFOSI agents were investigating her for alleged drug abuse, Appellant absented herself from her unit at nearby Holloman Air Force Base (AFB) without authority. Her absence was discovered on 3 November 2017 after Appellant's first sergeant told Appellant the evening before that she would pick Appellant up the next morning and drive Appellant to work. The next morning, the first sergeant could not locate Appellant at her off-base residence or in her dorm room on base. Appellant did not report for duty or communicate with anyone in her supervisory chain that she would be absent.

Unbeknownst to military authorities at the time of her absence, Appellant emptied her bank account, and left her military uniform and the key to her on-base dormitory room at the residence where she used drugs. Initially, Appellant traveled around New Mexico and Colorado. On 7 November 2017, Appellant walked across the border into Mexico despite encouragement from friends to remain in the United States. Appellant stayed with a civilian friend's relative in Ciudad Juarez, Chihuahua, Mexico, and told friends and family she was "out of the state," but she would contact them if it was necessary to do so. While she was a fugitive in Mexico, Appellant smoked marijuana in the residence in Ciudad Juarez where she stayed.

Sometime after going AWOL, AFOSI agents began coordinating their search with deputies of the United States Marshals Service (USMS) who were investigating Appellant's civilian friend who sold Appellant the marijuana she used while still in New Mexico. Two days later Appellant learned that authorities in the United States had located and arrested her civilian friend, and after that, the friend and his family convinced Appellant to cross the border and return to the United States. On 15 November 2017, Appellant terminated her absence when she crossed back into the United States at the Paso Del Norte Port of Entry and was placed in the custody of USMS deputies. That same day the deputies turned Appellant over to the custody of Air Force authorities and Appellant was ordered into pretrial confinement.

On 4 January 2018, Appellant pleaded guilty to the marijuana and AWOL offenses, and also to negligently failing to refrain from driving a motor vehicle without a driver's license. At trial, Appellant stipulated to the facts surrounding her commission of the three offenses, including that from 3–15 November 2017, the public affairs office at Holloman AFB had responded to numerous

calls and requests for comment or information about an Airman who was reported missing from Holloman AFB.

In the Government's presentencing case, Appellant's squadron commander testified about the steps he and the unit's first sergeant initially took to try to locate Appellant. He described spending two-thirds of a duty day trying to find Appellant, and explained her absence was a hardship for the squadron because others had to perform her duties. Appellant's first sergeant testified how Appellant's AWOL became her main concern, so responsibilities she had for other Airmen were pushed down to their supervisors or other first sergeants. She testified she spent off-duty time coordinating and working with the legal office and agents of the AFOSI.

The parties stipulated to the expected testimony of a USMS deputy assigned to a fugitive task force. The stipulation described the assistance SA AG requested from the USMS to help locate and apprehend Appellant. According to the stipulation, SA AG relayed that Appellant could have fled with a civilian friend who was wanted by the task force. Following this lead, the deputy reviewed law enforcement records and commercially-available information, which led to an address in New Mexico where authorities thought they might locate the civilian friend, and possibly Appellant.

The stipulation explained that on the morning of 15 November 2017, ten members of the task force conducted surveillance of the address with participation by SA AG and two other AFOSI agents. Later in the morning, with additional investigative assistance provided by two AFOSI agents, the deputies located and arrested the civilian friend. As stipulated, the friend confirmed he knew Appellant's whereabouts and revealed that Appellant had fled to Mexico, and gave the address where he believed Appellant was residing. Family members of the civilian friend spoke to Appellant and convinced her to return to the United States. In the afternoon, four members of the task force notified the United States Customs and Border Protection (CBP) that Appellant may be entering the United States, and asked for assistance in verifying Appellant's identity in the event she had no form of identification on her person. Shortly after 1700 hours, CBP officers detained Appellant until she was later released to the custody of USMS deputies. All told, eight USMS deputies participated in the search for and apprehension of Appellant in addition to involvement by AFOSI agents.

In presentencing the military judge admitted four LORs and two letters of counseling from Appellant's personnel records, which were offered by the trial counsel in accordance with Rule for Courts-Martial (R.C.M.) 1001(b)(2).

## II. DISCUSSION

### A. Failure to Provide Discovery

#### 1. Additional Background

At trial on 4 January 2018, the Government also presented the testimony of SA AG who gave a first-hand account of efforts AFOSI made to locate Appellant. Ensuring Appellant's safety, she explained, was her detachment's "first and foremost priority." Concern for Appellant's safety was especially heightened when it became apparent that Appellant fled to a location outside the United States that was off-limits to military personnel due to drug cartel-related activity and violence, including kidnappings and homicides.[3] At various times the search involved all eight members of her detachment, as well as agents at three other bases. The AFOSI also received assistance from the Alamogordo (New Mexico) Police Department, the Otero County (New Mexico) Sheriff's Office, USMS deputies, and personnel at the Department of Homeland Security and the Bureau of Alcohol, Tobacco, Firearms, and Explosives.

SA AG explained that AFOSI attempted to publicize Appellant's disappearance, but the search was hindered by restrictions imposed on her detachment after a recent shooting in Texas. Among the steps taken, the agents examined Appellant's cell phone and bank records, and interviewed persons who recently had been in contact with her. The agents canvassed areas where Appellant might be found. SA AG described an instance of showing Appellant's picture to a gas station employee who thought he recognized Appellant as a customer he had seen that morning. After pulling surveillance footage and spending two-and-a-half days looking for the customer, the agents determined it was actually a hotel employee who looked like Appellant. SA AG suggested there were multiple indications Appellant was attempting to avoid being found including that she had left a credit card behind, emptied her bank account, turned off her cell phone, and avoided posting information on social media.

SA AG testified she worked 18–20 hour days and received phone calls at all hours of the night. She testified that AFOSI dedicated substantially more time and effort to Appellant's case than a typical case because it was a priority. In her words, "All of our cases, [and] everything else that we were doing at the time was stopped. We didn't do anything else but focus on this case."

On cross-examination, trial defense counsel challenged SA AG's testimony with prior statements she made, including: (1) whether USMS deputies became "actively" involved in the search just three days or one week before Appellant's apprehension; (2) the extent to which the alleged strain on AFOSI

---

[3] Appellant was not charged with an offense involving the alleged violation of an off-limits travel restriction.

was caused by Appellant's AWOL or the Texas shooting; (3) whether SA AG promised trial defense counsel that she would not conduct a post-apprehension interview of Appellant; and (4) whether SA AG was aware that Appellant had not taken medication for a behavioral health concern prior to her post-apprehension interview with AFOSI.

At the time of SA AG's testimony, the Defense was unaware that in July of the previous year, 2017, SA AG had received a LOR from the AFOSI detachment's superintendent for disobeying a no contact order and for making a false statement. SA AG had requested an extension to her leave status, but falsified that she was not with the person with whom she was not to have contact. The Defense did not receive this derogatory information despite making a specific request for such information before trial.[4] The trial counsel disclosed this information to the Defense on 1 March 2018, after Appellant's court-martial had adjourned, and after AFOSI informed the Holloman AFB legal office about the LOR.

### 2. Law

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The duty to disclose "encompasses impeachment evidence as well as exculpatory evidence." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citation omitted); *see United States v. Claxton*, 76 M.J. 356, 359 (C.A.A.F. 2017). To determine whether evidence, including impeachment evidence, is "material" to punishment, the court must evaluate whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome" of the trial. *Id.*

When the defense specifically requests discoverable information that is withheld, the heightened constitutional harmless beyond a reasonable doubt standard applies. *Claxton*, 72 M.J. at 359. "Failing to disclose requested material favorable to the defense is not harmless beyond a reasonable doubt if the

---

[4] Before trial, the Defense asked the Government to disclose evidence that might tend to diminish the credibility of a witness including but not limited to evidence of character, conduct, or bias bearing on credibility. The Defense also requested derogatory data on AFOSI agents "involved in [Appellant's] investigation," including "evidence of any adverse administrative or disciplinary actions." No information responsive to Appellant's request was provided before trial.

undisclosed evidence might have affected the outcome of the trial." *Id.* (citing *United States v. Coleman*, 72 M.J. 184, 187 (C.A.A.F. 2013).

### 3. Analysis

At the outset, we find, as the Government concedes, that the withholding of information amounted to a discovery violation. Appellant asks this court to provide appropriate sentence relief because of the Government's failure to disclose material evidence favorable to Appellant. Had the information in the LOR been disclosed, Appellant would have used it to challenge the SA AG's credibility. Appellant suggests the military judge might have found the agent less credible if he knew she had made a false official statement and been disciplined for it. According to Appellant, this could have affected the outcome of the proceedings because Appellant might have received a lesser sentence. Although we are convinced that the Government improperly withheld discovery, we are also convinced that Appellant suffered no prejudice.

SA AG's testimony described the efforts undertaken by AFOSI to locate and apprehend Appellant, a fugitive Airman, during a 12-day AWOL. On the one hand, the improperly-withheld discovery was probative of truthfulness and might have been used to impeach SA AG's credibility and to suggest a motive to paint the efforts of AFOSI in a favorable light to curry favor with the AFOSI superintendent who administered the LOR. On the other hand, the withheld discovery did not directly contradict any evidence presented at trial, material or otherwise, or exonerate Appellant, or deprive Appellant of an opportunity to present evidence in extenuation or mitigation about her or any offense.

The discovery violation also did not impact sentencing for the drug and dereliction of duty offenses or cast Appellant's derogatory information from her personnel record in a new light. Appellant's stipulations with the trial counsel established that she fled the United States when she learned that AFOSI agents were investigating her for drug abuse. Evidence other than SA AG's testimony established the impact of her AWOL offense on her commander, first sergeant, and other Airmen in the unit. There is ample evidence in the record—established through means other than SA AG's testimony—of USMS involvement and the role of a fugitive task force in tracking Appellant down through her civilian friend, and then apprehending Appellant when she reentered the United States from Mexico. This other evidence of federal agency efforts reinforced SA AG's testimony that AFOSI, likewise, expended time and effort to search for Appellant.

Even if we assume the military judge would have given less weight to the impact SA AG described in her testimony if the Defense had the opportunity to confront her with the withheld discovery, we are not convinced any component of Appellant's approved sentence would have been less severe. Other evidence in the record warranted the punitive discharge, reduction in grade, and reprimand as punishment for the convictions. The 60 days of confinement approved by the CA was about one-third less than adjudged, and the CA disapproved the forfeitures to account for the discovery violation. We find there is no reasonable probability that the outcome would have been more favorable to Appellant had the Government fully complied with its discovery obligation. *See generally, Bagley*, 473 U.S. at 682; *Coleman*, 72 M.J. at 187. For these reasons the Government's nondisclosure was harmless beyond a reasonable doubt, and relief is not warranted.

## B. The Addendum to the SJAR and the CA Action

Appellant claims the SJA failed to advise the CA that her requested relief from forfeitures would amount to substantially less financial benefit to her than the sum of $1,066 pay per month for three months, as a result of the CA disapproving the adjudged forfeitures as relief for the Government's discovery violation. Appellant claims the SJA's advice to the CA was incomplete, and the CA's attempt to grant clemency was thereby thwarted. We are not persuaded.

### 1. Additional Background

The military judge's sentence of 4 January 2018 directed Appellant to forfeit $1,066 of her military pay per month for three months. Appellant completed her sentence to confinement by 14 January 2018, and was not subject to mandatory forfeitures of pay.[5] By operation of law, adjudged forfeitures would become effective on 18 January 2018, *see* Article 57(a), UCMJ, 10 U.S.C. § 857(a), unless the CA disapproved the forfeitures when he took action.

After release from confinement and eight days after the effective date of the adjudged forfeitures, on 26 January 2018, Appellant requested to be placed

---

[5] Appellant surrendered to deputies of the USMS on 15 November 2017, and was continuously held in pretrial confinement until sentencing on 4 January 2018. The military judge ordered credit against Appellant's sentence to confinement for the 50 days she was held in pretrial confinement. Because Appellant's agreement with the CA limited the confinement component of her sentence to 60 days, even without taking into account good time credit Appellant would have completed her sentence to confinement not later than 14 January 2018, and would not have been subject to mandatory forfeitures of pay, *see* Article 58b(a), UCMJ, 10 U.S.C. § 858b(a), when the adjudged forfeitures took effect on 18 January 2018.

in voluntary excess leave status pending the CA taking action in her case.[6] Appellant acknowledged in a written memorandum that she understood "excess leave is a non-pay status," that the Air Force "stops all pay and allowances effective the first day of excess leave," and that she "will not accrue any pay and allowances while on excess leave." Appellant provided an out-of-state leave address along with her contact information above her signature on the request. The wing commander, who was also the CA, approved Appellant's request by indorsement to Appellant's memorandum.

Post-trial processing of Appellant's case continued while Appellant was on excess leave in a no-pay status. In the SJAR dated 16 March 2018, the SJA advised the CA to approve the sentence as adjudged except for the full three months of confinement because the CA had agreed in the PTA to limit the confinement to 60 days. In Appellant's 10 April 2018 clemency submission, Appellant and her defense counsel petitioned the CA to disapprove both adjudged forfeitures and the reduction in grade. Defense counsel tied the request to the Government's discovery violation explaining that it was a meaningful and proportionate post-trial remedy. In a 13 April 2018 addendum to the SJAR, the SJA acknowledged "trial counsel should have discovered and disclosed the [LOR] to the defense" before trial as required by military law. In the addendum to the SJAR, the SJA changed his recommendation and advised the CA to grant clemency by disapproving the adjudged forfeitures.

Using his authority under Article 60(c)(2), UCMJ, 10 U.S.C. § 860(c)(2), and following the changed recommendation of his SJA in the addendum to the SJAR, on 4 May 2018, the CA honored the PTA's confinement cap and granted clemency by disapproving the adjudged forfeitures of pay as Appellant and her counsel requested, but approved the reduction to the grade of E-1 along with the remaining components of the sentence imposed by the military judge.[7]

### 2. Law

The proper completion of post-trial processing is a question of law this court reviews de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citing *United States v. Kho*, 54 M.J. 63 (C.A.A.F. 2000)). Failure to comment in a timely manner on matters in or attached to the SJAR forfeits

---

[6] "Members with an adjudged sentence that includes a punitive discharge may volunteer to be placed on excess leave pending the [CA]'s action." Air Force Instruction (AFI) 51-201, *Administration of Military Justice*, ¶ 8.39.2 (8 Dec. 2017). The Air Force procedures for voluntary excess leave are set out in AFI 36-3003, ¶ 4.2.2 and Table 4.4 Rule 7 (11 May 2016).

[7] The CA's action further directed Appellant to be placed in involuntary excess leave status in accordance with Article 76a, UCMJ, 10 U.S.C. § 876a ("The accused may be required to begin such leave on the date on which the sentence is approved.").

a later claim of error; we analyze such forfeited claims for plain error. *Id.* (citations omitted). "To prevail under a plain error analysis, Appellant must persuade this Court that: '(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right.'" *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005) (quoting *Kho*, 54 M.J. at 65) (additional citation omitted). "To meet this burden in the context of a [SJAR] error, whether that error is preserved or is otherwise considered under the plain error doctrine, an appellant must make 'some colorable showing of possible prejudice.'" *Id.* at 436–37 (quoting *Kho*, 54 M.J. at 65).

### 3. Analysis

On appeal, Appellant makes clear a consequence of her clemency request and the resultant CA action that partially granted her request, which may not have been apparent to her at the time. Appellant explains the adjudged forfeitures of $1,066 pay per month for three months that the CA disapproved would benefit Appellant for just eight days, that is, from 18 January 2018, the effective date forfeitures would have taken effect, to 25 January 2018, the day before Appellant went on voluntary excess leave.[8] Appellant claims the SJA failed to advise the CA that Appellant's requested relief from forfeitures would amount to just $275. Appellant argues this is "a meager amount," in fact $2,923 less than the sum of $1,066 pay per month for three months, which are the forfeitures the CA disapproved when he took action on Appellant's sentence.

Citing this court's opinion in *United States v. Koehn*, No. ACM S31021, 2007 CCA LEXIS 128 (A.F. Ct. Crim. App. 2 Mar. 2007) (unpub. op.), Appellant claims the SJA's failure to adequately advise the CA is a colorable showing of possible prejudice and therefore Appellant should be provided meaningful sentence relief on appeal. In *Koehn*, the CA contacted the appellant at the confinement facility to inquire into his financial situation. *Id.* at *2. At the end of the conversation, the CA told the appellant that he was going to grant him relief so that the appellant had money to pay bills. *Id.* In clemency, appellant stated he needed $495.00 per month. *Id.* at *3. Contrary to the SJA's recommendation, the CA reduced forfeitures to $500.00 pay per month for 12 months. *Id.* However, by operation of Article 58b, UCMJ, 10 U.S.C. § 858b, the appellant forfeited two-thirds, or $820.00, pay per month because automatic forfeitures began 14 days after the appellant's sentence was adjudged. *Id.* A panel of this

---

[8] We note that Appellant's claim has us assume she was placed on excess leave on 26 January 2019, the date she signed the request to be placed in a non-pay status, and not a later date.

court directed remand for new post-trial processing because "the convening authority intended to grant clemency, but that intent may have been thwarted in the execution." *Id.* at *8.

Here, unlike *Koehn*, there was no meeting of the minds or evidence that the CA was disposed to grant Appellant a particular level of financial relief such as to pay bills or for some other purpose. Appellant's situation is also unlike *Koehn* because here it was Appellant's own request to be placed on voluntary excess leave, not automatic forfeitures, that reduced the monetary value of the clemency she would later request and might have received if she had not voluntarily requested to be placed in excess leave status.

Under the plain error standard of review, Appellant must show error that was plain or obvious. Appellant voluntarily requested to enter a non-pay status on 26 January 2018, which the CA approved. One hundred days later, on 10 April 2018, Appellant requested relief from adjudged forfeitures, which the CA also approved based on the Government's failure to disclose the agent's LOR. The SJA did not provide an incomplete or incorrect recommendation to the CA. Rather, the addendum to the SJAR advised the CA to do exactly what Appellant requested and to disapprove the forfeitures imposed by the military judge. Although the SJA did not inform the CA that this act of clemency would bring about a modest financial benefit—as Appellant now claims on appeal, neither Appellant nor counsel sought a particular level of financial relief, or disclosed that Appellant's request to be placed on voluntary excess leave should enter the CA's calculus when he took action.

Even if we assume that the SJA erred, it was not a clear or obvious one. The SJA and CA could not reasonably divine that by fully granting Appellant's request for relief from forfeitures that Appellant would nonetheless conclude it was less than she expected to receive. Had Appellant not requested excess leave and post-trial processing continued on the same timeline as it did in her case, Appellant would not have been subject to forfeit her pay due to the CA's disapproval of the forfeitures. Under these circumstances, Appellant has not shown the SJA thwarted Appellant's request for clemency, as claimed, or error, plain or otherwise. *See Kho*, 54 M.J. at 65.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court