*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

## UNITED STATES
Appellee

**v.**

## Zachary R. BRAUM, Captain
United States Air Force, Appellant

**No. 25-0046**
Crim. App. No. 40434

Argued October 8, 2025—Decided April 8, 2026

Military Judges: Mark F. Rosenow (pretrial)
and Shad R. Kidd (trial)

For Appellant: *Scott Hockenberry*, Esq. (argued); *Daniel Conway*, Esq. (on brief); *Captain Samantha M. Castanien*.

For Appellee: *Captain Heather R. Bezold* (argued); *Colonel Matthew D. Talcott, Lieutenant Colonel Jenny A. Liabenow, Major Jocelyn Q. Wright*, and *Mary Ellen Payne*, Esq. (on brief).

Amicus Curiae for Appellant: *Vivian Bolen* (law student) (argued); *John J. Korzen*, Esq. (supervising attorney) (on brief) — Wake Forest University School of Law Appellate Advocacy Clinic.

Judge SPARKS announced the judgment of the Court, in which Judge MAGGS joined. Judge HARDY filed a separate concurring opinion, in which Judge JOHNSON joined. Chief Judge OHLSON filed a dissenting opinion.

————————

Judge SPARKS announced the judgment of the Court.

This appeal concerns whether the military judge erred in finding the government can properly refuse to disclose evidence it has physical possession, custody, or control over when it may not, as a matter of law, access that evidence. Resolution of this issue would require this Court to determine whether a victim's constitutional right to privacy under the Fourth Amendment supersedes an accused's statutory discovery rights under Rule for Courts-Martial (R.C.M.) 701.[1] And this issue also bears on whether denying an accused evidence on this basis violates his or her constitutional right to a fair trial.

However, we need not determine whether the military judge erred if we determine that the error, if any, was harmless beyond a reasonable doubt. Like the United States Air Force Court of Criminal Appeals (CCA), we hold that even assuming the military judge erred, any error was harmless beyond a reasonable doubt. *United States v. Braum*, No. ACM 40434, 2024 CCA LEXIS 419, at *17, 2024 WL 4458537, at *6 (A.F. Ct. Crim. App. Oct. 10, 2024) (unpublished). Therefore, we affirm the CCA.

## I. Background

The Government charged Appellant with multiple offenses arising from his sexual abuse of his then fiancée BE[2] and related conduct. Appellant and BE engaged in "BDSM"[3] during their relationship. The defense's main theory at trial was that BE voluntarily consented to these BDSM activities. But this theory was largely unsuccessful, and a general court-martial composed of officer members convicted Appellant of three specifications of rape, three

---

[1] All citations to the R.C.M. in this opinion refer to the *Manual for Courts-Martial, United States* (2019 ed.), unless otherwise noted.

[2] To preserve BE's privacy, this opinion presents her name as a pseudonym.

[3] "BDSM" is an abbreviation meaning "bondage, discipline, sadism, and masochism."

specifications of sexual assault, one specification of abusive sexual contact, and three specifications of domestic violence in violation of Articles 120 and 128b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 928b (2018).[4])

This appeal focuses on an issue which arose before trial: BE's meeting with the Newton Police Department (NPD) and the Air Force Office of Special Investigation (OSI) to report Appellant's misconduct. During this meeting, BE repeatedly referred to her phone while responding to questions. This led law enforcement to ask BE whether she would consent to their extracting limited location-related data from her phone. An "NPD officer explained that the entire contents of the phone would be downloaded but that the search would be limited to the location-related information, in accordance with BE's consent." BE agreed, and NPD kept the complete extraction of her phone on a flash drive.

The Government later provided the defense with the limited location-related data that BE had authorized law enforcement to access. It did not turn over the full extraction. The defense moved to compel the Government to turn over the entire extraction under R.C.M. 701(a)(2)[5]

---

[4] Appellant was also convicted of one specification of reckless operation of an aircraft in violation of Article 113, UCMJ, 10 U.S.C. § 913 (2018). The members found Appellant guilty by excepting the language "on divers occasions" for one of the domestic violence convictions and made findings by exceptions and substitutions for another domestic violence offense. The language "on divers occasions" was excepted by the military judge pursuant to R.C.M. 917 for one of the sexual assault convictions. Appellant was found not guilty of two specifications of sexual assault and two specifications of assault consummated by battery.

[5] R.C.M. 701(a)(2)(A)(i) provides, in part, that "the Government *shall*," upon defense request, "permit the defense to inspect any books, papers, documents, *data*, photographs, tangible objects, buildings, or places, or copies of portions of these items, if the item is *within the possession, custody, or*

because the extraction was in the Government's physical "possession, custody, or control," or in the alternative, to produce the entire extraction under R.C.M. 703(e)(1)[6] as it was "relevant and necessary" to Appellant's defense. Specifically, Appellant possessed ninety-one pages of text exchanges between him and BE from his own phone "in which BE sent pictures of women in bonds, sexual paraphernalia, and messages indicating willing participation in the use of that paraphernalia." According to the defense, the full extraction was thereby necessary to corroborate these messages and contradict BE's anticipated testimony that she never requested or sought BDSM activities with Appellant, and relatedly, did not purchase sex toys or BDSM items to engage in said activities.

The Government responded, arguing that R.C.M. 701(a)(2) did not apply because although it physically possessed the full extraction, it was not legally "within the control of military authorities, as accessing that data would be a violation of [BE's] Fourth Amendment constitutional rights." As to the defense's R.C.M. 703(e)(1) contention, the Government averred that production of the full extraction was unnecessary for the defense to "hunt through all of the data on [BE's phone] for potential ammunition," because the defense "offere[d] no factual basis or analysis of any kind" to support its assertion that BE's remaining phone data contained exculpatory evidence.

The military judge began with the defense's R.C.M. 701(a)(2) argument and observed that this "issue turns on whether physical possession, custody, or control suffices [under R.C.M. 701(a)(2)(A),] or if 'legal' possession, custody, or control, though not stated in [R.C.M.] 701(a)(2)(A), is necessarily implied." The military judge determined it was the latter and found the Government's

*control of military authorities* and . . . the item is relevant to defense preparation." (Emphasis added.)

[6] R.C.M. 703(e)(1) states that "[e]ach party is entitled to the production of evidence which is relevant and necessary."

discovery obligations under R.C.M. 701(a)(2)(A) were not triggered because it could not "legally" access any data beyond BE's consent.

The military judge then turned to the defense's R.C.M. 703(e)(1) argument, opining this "issue turns on whether the evidence exists and whether it is relevant and necessary." In pertinent part, the military judge explained that:

> The defense argues that access to the parts of BE's phone to which she did not consent being searched is necessary because the pictures BE purportedly sent must have come from somewhere on BE's phone, reasoning the phone would contain evidence of receipt of, searches for, or downloads of the images. The evidence provided by the defense does not establish that such evidence exists in the copy of BE's phone, though it does suggest it might. More importantly, the defense has not demonstrated this evidence is necessary. The defense already has evidence that BE had the pictures, sent them to [Appellant], and sent the messages to [Appellant]. Evidence that BE sent the pictures carries with it the logical inference, as the defense argues, that she had them on her phone, from which it can be argued that they were sent to her or sought and downloaded by her. Additional evidence of how BE obtained the pictures that may or not be on the forensic copy of the phone adds little, if anything, to the effect of the evidence the defense already has with regard to undermining or contradicting BE's claims of lack of consent, that she never requested sex toys or BDSM items, and that she never requested BDSM activities and never brought it up with [Appellant].

Accordingly, the military judge denied Appellant's request to produce the complete extraction, finding that the defense had not shown it to be relevant and necessary.

In relevant part, Appellant appealed to the CCA arguing that the military judge erred in denying his motion to compel under R.C.M. 701(a)(2). *Braum*, 2024 CCA LEXIS 419, at *15, 2024 WL 4458537, at *5. Appellant did

not appeal the military judge's R.C.M. 703 determination. The CCA avoided the question of whether the military judge properly interpreted and applied R.C.M. 701(a)(2)(A) and found that even assuming the military judge erred, any error was harmless beyond a reasonable doubt. *Id.* at *17, 2024 WL 4458537, at *6. In reaching this conclusion, the CCA found that it was "highly speculative" the full extraction contained "helpful information" considering the defense "already had the evidence that was likely to be found on the phone that would be helpful to them in the form of the pictures and the 91 pages of text messages exchanges" in addition to the limited location-related data. *Id.,* 2024 WL 4458537, at *6.

This Court then granted review of the following issue:

> Can the Government properly refuse to disclose relevant, non-privileged data in its possession, custody, and control on the basis that the witness who provided the data gave limited consent with respect to its use? If not, is relief warranted?

*United States v. Braum*, 85 M.J. 370, 370-71 (C.A.A.F. 2025) (order granting review).

## II. Discussion

The granted issue highlights the tension between a victim's constitutional right to privacy under the Fourth Amendment and the accused's statutory right to discovery under the R.C.M. And while not argued in this case, we are cognizant that "in the military justice system, both the right to a trial that is fair, and the right to a trial that is objectively seen to be fair, have constitutional dimensions sounding in due process." *United States v. Boyce*, 76 M.J. 242, 249 n.8 (C.A.A.F. 2017). Had it been raised, the granted issue may also present the tension between a victim's constitutional right to privacy and an accused's constitutional right to a fair trial. This appeal presents an open and unresolved question of whether, or when, a victim's constitutional privacy rights may supersede an accused's discovery rights and, potentially, his constitutional right to a fair trial. While we recognize the

6

significance of the granted issue, we resolve this case on the narrower grounds of harmless error.

"Our review for prejudice is de novo." *United States v. Sigrah*, 82 M.J. 463, 467 (C.A.A.F. 2022) (citing *United States v. Clark*, 79 M.J. 449, 455 (C.A.A.F. 2020)). This Court has established two categories of disclosure error: (1) "cases in which the defense either did not make a discovery request or made only a general request for discovery"; and (2) cases in which the defense made a specific request for the undisclosed information. *United States v. Roberts*, 59 M.J. 323, 326-27 (C.A.A.F. 2004). Because Appellant requested the cell phone extraction, the second category applies to this case.[7] "[And f]or cases in the second category, [this Court] appl[ies] the heightened constitutional harmless beyond a reasonable doubt standard." *United States v. Coleman*, 72 M.J. 184, 187 (C.A.A.F. 2013) (citations omitted). Under this standard, the Government has the burden to show that any error made was harmless beyond a reasonable doubt. *United States v. Gonzalez*, 62 M.J. 303, 306 (C.A.A.F. 2006).

"Harmless beyond a reasonable doubt is a high standard, but it is not an impossible standard for the Government to meet." *Id.* The failure to "disclose requested material favorable to the defense is not harmless beyond a reasonable doubt if the undisclosed evidence might have affected the outcome of the trial." *Coleman*, 72 M.J. at 187. This Court's prejudice determination is based on the entire record. *United States v. Morris*, 52 M.J. 193, 197 (C.A.A.F. 1999).

We agree with the CCA that any error was harmless considering the defense "already had the evidence that was likely to be found on the phone that would be helpful to them in the form of the pictures and the 91 pages of text messages." *Braum*, 2024 CCA LEXIS 419, at *17, 2024 WL 4458537, at *6. As a party to the communications

---

[7] The parties also agree this case falls into the second category.

Appellant possessed the evidence necessary to contradict BE's claims that she never sought out BDSM activities and paraphernalia. And at trial, the defense effectively cross-examined BE using these pages of text message exchanges and pictures to make this very argument. Thus, the evidence Appellant sought was cumulative and would have only reinforced what the members already knew. Put differently, the full extraction was merely cumulative of other impeachment evidence—substantial in volume and weight—already available to the defense.

Appellant takes the position that he was prejudiced because having access to the full data on BE's phone could have cast doubt on her general credibility and shown that she actively participated in BDSM activities. As noted in Appellant's brief:

> Having the complete extraction of BE's phone might have demonstrated the text messages presented by the defense were not inaccurate or misleading, supporting the defense case that BE was a much more active participant in the charged activities than she represented in her accusations, and lessoning [sic] BE's credibility by undercutting her attempt to explain away her inconsistent actions by accusing Appellant and his defense counsel of manipulating evidence.

We are not persuaded. To be sure, impeachment evidence or evidence otherwise undermining the credibility of the Government's key witness is more likely to be material than that related to other witnesses. But the evaluation of whether potential evidence might have affected the trial outcome must be based on the entire record and not merely assumed. *Morris*, 52 M.J. at 197. In this case, the full extraction would not have provided the members with a substantially different basis for assessing BE, as the defense effectively cross-examined her using evidence that was qualitatively the same.

Moreover, it ignores that the defense made inroads in challenging BE's credibility, and more broadly, her character for truthfulness. Indeed, BE's character for

truthfulness was undermined by even a friendly witness—her best friend—who testified BE was "untruthful." When considered in the context of the entire record, the marginal effect of additional impeachment or evidence merely reinforcing other evidence already presented by the defense is relatively small and unlikely to have affected the outcome of trial.

Appellant also argues that he was prejudiced by not having access to the data on BE's cell phone because "BE's testimony cast doubt on the veracity of the text messages BE sent to Appellant" and because the Government magnified the harm when it "criticized the defense in closing for asking BE to provide her phone data as evidence." However, we disagree with Appellant's characterization of the record. In our view, BE's testimony did not directly challenge the veracity of the entirety of the text messages presented by the defense when considering the questions asked by trial defense counsel. And the vagueness of the brief remarks she did make belie any claim that they affected the outcome of the trial. Moreover, the point of trial counsel's closing argument was not to criticize the defense for seeking her phone records but instead to encourage the panel members to consider whether BE had a motive to lie. Accordingly, we find these arguments are without merit.

At most, what Appellant speculates would have been on the full extraction amounted to largely cumulative impeachment evidence that would have added little weight to the defense's attack on BE's credibility. The marginal effect of additional impeachment is relatively small and unlikely to have affected the outcome.

### III. Conclusion

We conclude that even if the military judge erred, the error was harmless beyond a reasonable doubt. The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Judge HARDY, with whom Judge JOHNSON joins, concurring in the judgment.

The question presented in this case is whether the military judge erred when he denied Appellant's motion to compel the Government to produce all the extracted data from the victim's (BE's) cell phone under Rule for Courts-Martial (R.C.M.) 701. As Judge Sparks notes in his opinion, this Court has long held that when the government erroneously fails to provide information pursuant to a specific defense request, that error implicates the accused's Fifth Amendment due process right to prepare a defense. *United States v. Hart*, 29 M.J. 407, 409-10 (C.A.A.F. 1990) (citing *Brady v. Maryland*, 373 U.S. 83 (1963)). Because such an error is constitutional in nature, this Court assumes that the error materially prejudiced the substantial rights of the accused and will grant relief unless the government can prove that the error was harmless beyond a reasonable doubt. *Id.* at 410; *see also United States v. Roberts*, 59 M.J. 323 (C.A.A.F. 2004).

Like the United States Air Force Court of Criminal Appeals (AFCCA) below, Judge Sparks assumes—without deciding—that the military judge erred by denying Appellant's motion to compel and concludes that no relief is warranted because the error was harmless beyond a reasonable doubt. I agree that Appellant's finding of guilt and sentence should be affirmed, but I come to that conclusion because I do not believe that the military judge erred. Accordingly, I agree that the AFCCA should be affirmed.

## I. Appellant's Motion to Compel

During the Government's investigation into the criminal allegations lodged by BE against Appellant, law enforcement agents asked BE if they could review the data from her cell phone to corroborate her statements. A special agent from the Air Force Office of Special Investigation (AFOSI) and an officer from the local civilian police department presented BE with a consent form that—in its original and unaltered form—would have granted law enforcement BE's consent to search her cell phone "including any or all digital content therein." BE refused to consent to the search of all the data on her cell phone but agreed to

*United States v. Braum*, No. 25-0046/AF
Judge HARDY, with whom Johnson, J., joins,
concurring in the judgment

provide law enforcement with location-related information. BE and the agents modified the consent form, crossing out the words "including any and all digital content therein" and replacing them with "location information." A police officer explained to BE that the entire contents of her cell phone would be downloaded but that the Government's search would be limited to the location-related information in accordance with her signed consent form. Accordingly, another police officer extracted the data from BE's cell phone and returned the cell phone to BE. The police officer copied the extracted data to a flash drive that the police retained as evidence.

Prior to trial, Appellant's defense counsel and the Government engaged in a lengthy discovery process. During that process, the defense requested production of any extracted cell phone data. The Government eventually disclosed the existence of the extracted data from BE's cell phone. The Government declined, however, to provide the defense with all the data from BE's phone, and instead only provided the defense with the location data. The Government justified the limited production by explaining that BE's consent was restricted to location data and that the Government's review of the extracted data was similarly restricted to location data.

Seeking production of all the data from BE's cell phone, Appellant filed a motion to compel the Government to provide the defense with all the extracted data. Appellant primarily argued that the Government was obligated to produce the cell phone data under R.C.M. 701, because the data was "squarely within the possession of the government." Appellant later clarified in a supplement to his motion that if the military judge determined that all of the extracted data from B.E.'s cell phone was not in the possession or control of the Government, the defense moved for production of that data under R.C.M. 703 because the data was relevant and necessary to the preparation of Appellant's defense.

The military judge denied Appellant's motion to compel. In his ruling, the military judge conceded that BE's cell

*United States v. Braum*, No. 25-0046/AF
Judge HARDY, with whom Johnson, J., joins,
concurring in the judgment

phone data was within the "physical" possession, custody, or control of the Government, but he concluded that R.C.M. 701 did not apply because the cell phone data was not within the Government's "legal" possession, custody, or control. The military judge acknowledged that the requirement for "legal" possession, custody, or control was not stated in the text of R.C.M. 701(a)(2)(A), but he concluded that it was "necessarily implied." The military judge reasoned that because BE had "specifically and explicitly limited the consent she gave to location data," she had not waived her privacy interests or legal protections for the remaining data from her cell phone. For these reasons, the military judge held that the remaining data was not discoverable by the defense under R.C.M. 701(a)(2)(A).

Turning to R.C.M. 703, the military judge concluded that Appellant failed to establish that the evidence was relevant and necessary to his defense. The military judge first noted that Appellant already had access to any text messages or pictures sent from BE to Appellant from Appellant's own cell phone. The military judge described Appellant's arguments about other evidence from BE's cell phone as speculative and concluded that—even if that evidence did exist—Appellant had failed to demonstrate that it was necessary considering the other evidence available to the defense.

Before the AFCCA, Appellant challenged the military judge's ruling with respect to R.C.M. 701, but not with respect to R.C.M. 703, arguing that the Government could not "refuse to disclose relevant, non-privileged data in its possession, custody, or control on the basis that the witness who provided the data gave limited consent with respect to its use." The AFCCA declined to determine whether R.C.M. 701 required the Government to produce all the extracted data from BE's cell phone, concluding instead that—even assuming error—the nondisclosure of that data was harmless beyond a reasonable doubt.

## II. Standard of Review

The interpretation of a provision of the Rules for Courts-Martial is a question of law that this Court reviews

*United States v. Braum*, No. 25-0046/AF
Judge HARDY, with whom Johnson, J., joins,
concurring in the judgment

de novo. *H.V.Z. v. United States*, 85 M.J. 8, 13 (C.A.A.F. 2024). This Court reviews a military judge's discovery rulings for an abuse of discretion. *United States v. Stellato*, 74 M.J. 473, 480 (C.A.A.F. 2015). An abuse of discretion occurs "when [the military judge's] findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." *United States v. Miller*, 66 M.J. 306, 307 (C.A.A.F. 2008).

### III. Discussion

R.C.M. 701 governs discovery in courts-martial, including the handling of electronic data collected from cell phones. As relevant in this case, R.C.M. 701(a)(2)(A) requires the Government, upon request of the defense, to permit the defense to inspect and copy data that "is within the possession, custody, or control of military authorities," if that data is relevant to the preparation of the accused's defense. The novel issue presented by this case is what to do when the Government has relevant cell phone data within its possession, custody, or control, but has no legal authority to search that data because the owner of the data withheld her consent.

The military judge resolved this issue by concluding that R.C.M. 701(a)(2)(A) only applies when the government has "legal" possession, custody, or control of the data. The military judge acknowledged that the text of the rule imposes no such requirement, but he concluded that it was "necessarily implied" and was needed to protect BE's Fourth Amendment privacy rights. Although I agree with the military judge's ultimate conclusion, I arrive at that result through slightly different reasoning.

First, I agree with the military judge that BE preserved her Fourth Amendment rights over the non-location data on her cell phone. In the initial ruling on Appellant's motion to compel, the military judge found: (1) that BE "specifically and explicitly" limited her consent to search her cell phone to location data; and (2) that the law enforcement officers had agreed that their search would be

*United States v. Braum*, No. 25-0046/AF
Judge HARDY, with whom Johnson, J., joins,
concurring in the judgment

"limited to the location-related information, in accordance with BE's consent." Based on these findings, the military judge concluded that BE had not waived her privacy interests in her remaining cell phone data or waived the legal protections over that data.

That conclusion was indisputably correct. Imagine if law enforcement had disregarded the signed consent form and the assurances that they provided to BE, searched the remainder of BE's cell phone data, found evidence of a crime, and brought charges against BE based on that evidence. There can be no doubt that evidence would have been suppressed as an illegal search that violated BE's reasonable expectations of privacy. In *United States v. Black*, this Court recognized that the owner of a cell phone can restrict her consent to specific parts of the phone when she gives a third-party access to the phone, rejecting the argument that the owner has assumed the risk that the third party will access the entire phone. 82 M.J. 447, 452-53 (C.A.A.F. 2022). So too here. BE granted the Government access to her location data, but "specifically and expressly" refused to give the Government access to the remainder of her data.

Appellant argues that BE waived or extinguished her Fourth Amendment rights when she allowed the Government to download the data from her cell phone and that she could no longer maintain a reasonable expectation of privacy in the data when the Government had access to it. This argument disregards the fact that the "touchstone of the Fourth Amendment is reasonableness." *Florida. v. Jimeno*, 500 U.S. 248, 250 (1991) (citing *Katz v. United States*, 389 U.S. 347, 360 (1967)). The standard for measuring the scope of consent under the Fourth Amendment is that of "objective" reasonableness—what would the typical reasonable person have understood by the exchange with law enforcement? *Id.* at 251 (internal quotation marks omitted) (citations omitted). Given the signed consent form and the police officer's assurances to BE that the Government's search of her cell phone data would be restricted in accordance with her consent, it would be completely

*United States v. Braum*, No. 25-0046/AF
Judge HARDY, with whom Johnson, J., joins,
concurring in the judgment

reasonable for BE to believe that her non-location data was legally protected. Conversely, it would be completely unreasonable for the Government to believe that it could unilaterally disregard those assurances and disclose BE's data to a third party without judicial approval.

Second, I agree with the military judge that the extracted data from BE's cell phone was in the Government's "physical" possession, custody, or control. As noted by Appellant, the data was sitting on a flash drive presumably in a police evidence locker. This case is unlike *United States v. Secord*, where the government had physical possession of a locked cell phone but no ability to access any of the electronic data that might have been on the phone. 86 M.J. 56, 58 (C.A.A.F. 2025). Here, Appellant is correct that the Government had the ability (if not the legal right) to search and distribute the entire digital contents of BE's cell phone.

My agreement with the military judge on these two points underscores the novel legal issue presented by this case: the Government had possession, custody, or control of the data from BE's cell phone, but that data was still protected by BE's Fourth Amendment rights. The military judge resolved this issue by concluding that R.C.M. 701 did not apply because the Government did not have "legal" possession, custody, or control of the extracted data. Here, I part ways with the military judge because I agree with Appellant that R.C.M. 701 imposes no such requirement. In my view, R.C.M. 701 applied to the extracted data from BE's cell phone because that data was in the Government's possession, custody, or control.

I would resolve this apparent conflict between what the plain language of R.C.M. 701(a)(2) required (disclosure of all the extracted data to Appellant) and what the Fourth Amendment prohibited the Government from doing (searching and disclosing the remaining data from BE's cell phone) by applying the hierarchy of laws. When a Rule for Courts-Martial conflicts with the requirements of the Constitution, the rule must yield. *See Marbury v. Madison*, 5 U.S. 137, 177 (1803) (recognizing the Constitution as the "fundamental and paramount law of the nation"). Even

*United States v. Braum*, No. 25-0046/AF
Judge HARDY, with whom Johnson, J., joins,
concurring in the judgment

when exercising the authority delegated from Congress via Article 36, UCMJ,[1] the President does not have the power to promulgate a procedural rule that orders law enforcement officers to violate a civilian's Fourth Amendment rights without seeking authorization to use compulsory process from a judge.[2] *Cf. United States v. Scheffer*, 523 U.S. 303, 311 n.7 (1998) (noting that it would be an odd inversion of our hierarchy of laws if the interpretation of a military rule of evidence worked a corresponding change in the meaning of the Constitution). Accordingly, despite the plain language of R.C.M. 701, the military judge did not err when he concluded that Appellant was not entitled to production of all the extracted data from BE's cell phone.

Of course, this does not mean that Appellant had no recourse or alternative means of obtaining relevant evidence that was necessary for the preparation of his defense. Even when R.C.M. 701 does not apply, R.C.M. 703(a) grants both the government and the defense an equal opportunity to obtain evidence, including the benefit of compulsory process. Thus, even if BE's Fourth Amendment rights prevented the Government from unilaterally providing Appellant with BE's cell phone data, the military judge had the authority to grant Appellant access to that data under R.C.M. 703(e) *if* Appellant could establish the relevance of the data and its necessity to his defense.

But in his order denying Appellant's motion to compel, the military judge expressly ruled that the defense had failed to demonstrate that the evidence was necessary, particularly considering the evidence already available to the defense. Appellant declined to appeal this aspect of the military judge's ruling, either before the AFCCA or before this Court. Thus, we need not consider whether the military

---

[1] *See* 10 U.S.C. § 836 (authorizing the President to prescribe procedural rules for courts-martial).

[2] Of course, there are many exceptions to this general statement that might apply in specific circumstances, but Appellant does not argue that any such exceptions apply here.

*United States v. Braum*, No. 25-0046/AF
Judge HARDY, with whom Johnson, J., joins,
concurring in the judgment

judge abused his discretion in denying Appellant's request for production under R.C.M. 703.

## IV. **Conclusion**

The military judge did not abuse his discretion when he denied Appellant's motion to compel the production of all the extracted data from BE's cell phone pursuant to R.C.M. 701. Because the military judge did not err, I agree that the decision of the United States Air Force Court of Criminal Appeals should be affirmed.

Chief Judge OHLSON, dissenting.

The lead opinion concludes that any error committed by the military judge in this case was harmless beyond a reasonable doubt.[1] I disagree. For the reasons stated below, I conclude that the Government failed to meet its heavy burden under this onerous standard of review and that this Court should therefore set aside the findings and sentence. Because the lead opinion reaches a different result, I respectfully dissent.

Appellant, an Air Force pilot, and the complainant, BE, had a long-term relationship that included marriage plans. The day after their relationship soured, however, BE went to local law enforcement in Kansas and accused Appellant of sexually assaulting her. Specifically, BE alleged that on a number of occasions Appellant forced her to participate in BDSM (bondage, discipline, sadism, and masochism) activities without her consent. Appellant was court-martialed, convicted of a number of sexual offenses and physical acts of domestic violence involving BE, and sentenced to forfeiture of all pay and allowances, dismissal, a reprimand, and a total of nine years of confinement.

At trial, Appellant did not contest that he and BE had engaged in BDSM activities. Rather, he argued that the sexual acts were consensual or at least that he reasonably believed they were consensual. In support of his position, the defense introduced material from Appellant's cell phone seemingly demonstrating BE's acquiescence to the acts. For example, BE sent Appellant explicit images depicting women in sexually submissive positions with a man. Further, when Appellant texted a reference to a Snapchat photo by saying, "I didn't see that snap coming," BE texted back, "I got tired of waiting, I wanted to try the butt plug." Moreover, BE's own Amazon account reflected the purchase of an "anal hook," a stuffed leather gag, "butt

---

[1] The lead opinion declines to substantively address whether the military judge erred in this case. Instead, the lead opinion assumes without deciding that there was error and then proceeds to a prejudice analysis. Because of the approach taken by the lead opinion, I too shall focus on the prejudice issue rather than on the underlying granted issue.

plugs," and rope. In fact, BE texted Appellant a screenshot of the Amazon listing for the anal hook on the same day of the purchase. And when Appellant made a reference to using the back door to BE's home, BE texted back that her "back door" was for "hooks and clubs only." In addition, the defense produced as a witness BE's former best friend who testified that BE had a reputation for not being truthful.

When the defense confronted BE with the material from Appellant's cell phone prior to trial, BE sought to deflect the questions and to minimize the import of the material by claiming that the text messages being shown to her were "incomplete" and "cherry picked" and therefore "misleading." This situation played out in the following manner at trial:

> Q: Ma'am, when I asked you about these text messages, and I said, "What are these," you said, "I do not remember them." That's all of my question.

> A: Yeah, I was having a hard time remembering the full conversation because it feels like this is very choppy and cherry picked.

When the defense sought to obtain from BE *her* cell phone's version of the materials, however, BE refused to grant access to them. And when Appellant moved to compel their production, the military judge denied the defense motion.

The lead opinion takes the position that because the defense was able to cross-examine BE using the materials retrieved from *Appellant's* phone, the evidence from *BE's* phone "was cumulative and would have only reinforced what the members already knew." *United States v. Braum*, __ M.J. __, __ (8) (C.A.A.F. 2026) (plurality opinion). I respectfully suggest, however, that this misses the point.

To be sure, in typical cases, text messages of this nature would indeed be cumulative. But what was unusual about the instant case was that the victim refused to turn over her copy of the texts because she indicated she wanted to "shield" her privacy interests, but then she used the defense's need to rely solely on Appellant's version of the texts as a "sword" to allege that the defense was misleadingly

cherry-picking those texts. In essence then, BE was allowed to convey to the panel members that they should discount what the text messages showed about her willing participation in the BDSM activities because the defense was confronting her with a supposedly incomplete set of texts—but the only way the defense could rebut BE's claim was to have access to BE's copy of the text messages, which BE herself blocked. The colloquial term for BE's approach is "chutzpah"; the legal term for the military judge's denial of the defense motion to compel production of BE's text messages is "prejudicial."

At bottom, this case hinged on BE's credibility. And as the lead opinion itself concedes, the evidence impeaching BE's credibility was "*substantial in volume and weight.*" *Id.* (emphasis added). Moreover, the lead opinion goes on to note that "the defense made inroads in challenging BE's credibility, and more broadly, her character for truthfulness. Indeed, BE's character for truthfulness was undermined by even a friendly witness—her [former] best friend—who testified BE was 'untruthful.'" *Id.* at __ (8-9).

By pointing to the evidence adduced at trial that amply demonstrated BE's lack of credibility, the lead opinion implicitly acknowledges just how tenuous Appellant's conviction really was. And in *United States v. Coleman*, this Court held that the failure to "disclose requested material favorable to the defense is not harmless beyond a reasonable doubt if the undisclosed evidence might have affected the outcome of the trial." 72 M.J. 184, 187 (C.A.A.F. 2013). Here, BE used her leverage over the text messages to buffer the impact of the defense's cross-examination. If the military judge had properly allowed the defense to obtain access to BE's version of the text messages, BE's allegations against the defense would have been prevented or rebutted, thereby making the defense's cross-examination of BE even *more* effective. In light of these circumstances, I cannot agree that the Government has met its burden of demonstrating that any error made by the military judge in this case was harmless beyond a reasonable doubt. *See id.*

I conclude that the findings and sentence in this case should be set aside. Because this Court reaches a different result, I respectfully dissent.